[Civ. No. 57098. Second Dist., Div. Three. Apr. 22, 1980.]

DANNY FABRICANT, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE et al., Real Parties in Interest.

COUNSEL

Danny Fabricant, in pro. per., for Petitioner.

John H. Carson, County Counsel, and John P. Farrell, Deputy County Counsel, for Respondent.

No appearance for Real Parties in Interest.

OPINION

POTTER, J.—The petition of Danny Fabricant seeks to annul the order of respondent court directing him to pay a total of $375 to three attorneys as sanctions for petitioner's abuse of the subpoena power of the court by requiring them to attend as witnesses.

Petitioner is the defendant in an information charging violation of Penal Code section 12021 (possession of a firearm by an ex-convict) retrial of which is pending in respondent court after reversal on appeal. He is appearing pro. per. in that matter. The subpoenas required the attorney witnesses to attend the hearing of a pretrial motion of petitioner seeking to enlarge his pro. per. privileges as a pretrial detainee.

The witnesses moved to quash the subpoenas on the ground that they had no relevant testimony to offer in petitioner's behalf. Upon granting such relief, respondent court inquired as to the amount of time which had been spent by the witnesses and their hourly rates for their services. Two attorneys were allowed compensation at $75 an hour for two hours each, and a third was allowed one hour at the same rate.

Originally the petition was summarily denied by this court upon the ground that the order was "appealable as a final order on a collateral matter directing the payment of money." (*Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 634, fn. 3 [150 Cal.Rptr. 461, 586 P.2d 942].) A petition for hearing in our Supreme Court was granted. The matter was transferred to the Supreme Court and retransferred to this court "with directions to issue an alternative writ of mandamus and/or prohibition . . . ." In accordance with this directive, we issued an alternative writ which was served upon respondent court and upon the People and the attorney witnesses as real parties in interest.

The only return received was that of the respondent court. It denied certain allegations of the petition which are not pertinent to the issue in this proceeding and alleged that "[p]etitioner subpoenaed a large number of attorneys for wholly irrelevant and immaterial testimony thereby knowingly abusing the process of the court and interfering with a judicial proceeding." A reporter's transcript of the proceedings in respondent court was prepared and designated as part of the record.

An examination of that transcript discloses the basis for the order under review. Petitioner had moved to augment his pro. per. privileges by requiring installation of a telephone in his jail cell. He subpoenaed 50 attorneys picked at random from the phone book, "to establish the nature and extent of the facilities that are available to private counsel." In ruling, the court orally stated that the basis of the sanctions was the finding that petitioner's utilization of the subpoenas in this fashion constituted a "blatant and frivolous violation of . . . processes of this court."

## CONTENTIONS

Petitioner contends that respondent court had no authority to require that he pay witness fees to the subpoenaed attorneys as a sanction or otherwise. Respondent court contends that it had inherent power to impose "sanctions on petitioner for his abuse of the court's subpoenas" which constituted a contempt and that such inherent power included "fashioning an equitable form of restitution by ordering the payment to be made to the attorneys whose time had been wasted."

## DISCUSSION

### Summary

The inherent power of the court to control its proceedings does not include using fee awards as sanctions where the general policy of the law denies such fees and no specific statute authorizes the award. Whether the awards to the attorneys be viewed as attorney's fees or as witness fees, the general policy of the law negates any obligation on the part of petitioner to pay them, and there is no statutory authority authorizing the imposition of any such obligation in a criminal proceeding. Nor can the award be upheld as a punishment for contempt; no proceedings appropriate to find petitioner in contempt were conducted.

### The Inherent Power of the Court to Award Fees as Sanctions Is Limited

Respondent court relies upon the decision of the First District of this court in *Santandrea v. Siltec Corp.* (1976) 56 Cal.App.3d 525, 529 [128 Cal.Rptr. 629], for the proposition that "[e]very court has the inherent power to regulate the proceedings of matters before it and to effect an orderly disposition of the issues presented." *Santandrea* upheld the imposition of an award of attorney's fees as a sanction against a plaintiff who filed a frivolous motion to reconsider the granting of a summary judgment. In so holding, the court relied largely upon *Fairfield v. Superior Court* (1966) 246 Cal.App.2d 113 [54 Cal.Rptr. 721].

The authority of both cases, however, has been virtually eradicated by the decision of our Supreme Court in *Bauguess v. Paine, supra,* 22 Cal.3d 626. In *Bauguess,* plaintiff's attorney, whose alleged misconduct necessitated a mistrial, was ordered to pay attorney's fees of $350 per day for the two days at trial which were wasted. The alleged miscon-

duct occurred out of the presence of the court. Though the court had stated that it considered such conduct a contempt, the award actually was made as a sanction and in lieu of proceeding on the contempt.

Our Supreme Court nullified the award. The opinion first points out the general policy of the law with respect to attorney's fees, saying in this respect (*id.*, at p. 634): "It has been the traditional practice in this county for each litigant to bear his or her own attorney's fees. (*Prentice v. North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 [30 Cal. Rptr. 821, 381 P.2d 645].) Awards of attorney's fees by courts are the exception rather than the rule. Generally, a court may properly award attorney's fees only pursuant to an agreement of the parties or statutory authority. This principle is codified in Code of Civil Procedure section 1021: 'Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties....' In the present case, there was no agreement between the parties that would support the trial court's award."

After demonstrating that "[c]learly, this case does not fit within any of the recognized equitable exceptions to the general rule that each party pay for its own attorney" (*id.*, at pp. 636-637), the court addressed the question of inherent power. It said in this respect (*id.*, at pp. 637, 639): "The remaining question this court must decide is whether, absent statutory authority, a court may award attorney's fees as a sanction under its *supervisory* power. Pursuant to this power, a court may take appropriate action to secure compliance with its orders, to punish contempt, and to control its proceedings. (*Bloniarz* v. *Roloson, supra*, 70 Cal.2d at pp. 147-148 [74 Cal.Rptr. 285, 449 P.2d 221].) Although a few statutes permit fee awards as sanctions, the appellate courts of this state have generally disallowed such awards based on a theory of inherent supervisory power. (See, e.g., *Wisniewski* v. *Clary, supra*, 46 Cal.App.3d 499 [120 Cal.Rptr. 176] [failure of party to attend mandatory settlement conference]; *Young* v. *Redman* (1976) 55 Cal.App.3d 827 [128 Cal.Rptr. 86] [bad faith defense, failure of party to appear at trial]; contra, *Santandrea* v. *Siltec Corp.* (1976) 56 Cal.App.3d 525 [128 Cal.Rptr. 629].) Even in the discovery context, where attorney's fees are permitted as sanctions under Code of Civil Procedure section 2034, a purely punitive award of $1,000 in attorney's fees has not been allowed. (*Welgoss* v. *End* (1967) 252 Cal.App.2d 982 [61 Cal.Rptr. 52] [sanction not permitted to punish plaintiff's dilatory conduct occurring prior to defendant's seeking a motion to compel].)

"Respondents rely chiefly on *Fairfield v. Superior Court, supra,* 246 Cal.App.2d 113, 120. However, that slender reed scarcely provides support for the sweeping power respondents would have this court approve. *Fairfield* held that a trial court may award attorney's fees or impose appropriate sanctions if a party refuses to obey an order compelling further answers to interrogatories. That award was upheld as within the exercise of the trial court's inherent power. However, it was only because of the somewhat novel circumstances of that case that Code of Civil Procedure section 2034 did not authorize the award, and it was clearly consistent with the Legislature's intent in enacting the Civil Discovery Act. (Code Civ. Proc., § 2016 et seq.) The present case does not involve these factors.

"It would be both unnecessary and unwise to permit trial courts to use fee awards as sanctions apart from those situations authorized by statute.

". . . . . . . . . . . . . .

"The Legislature has provided by statute that awards of attorney's fees may be granted by a court in specific situations. However, the situation presented by this case is not one of them. This case does not fall within the limited number of judicially recognized nonstatutory exceptions to Code of Civil Procedure section 1021. To carve out another judicial exception permitting such an award would pose serious due process problems. For all of these reasons, this court holds that the award of attorney's fees to respondents following a mistrial exceeded the proper limits of the trial court's inherent power.[8]"

We conclude from the decision in *Bauguess* that the court's inherent power to control its proceedings does not authorize fee awards to participants in litigation where there is a general legislative policy denying such awards and no statutory or recognized equitable exception is applicable.

*General Legislative Policy Is*
*Against the Award of Fees and No*
*Specific Exception Is Applicable*

---

"[8]This court specifically disapproves *Santandrea v. Siltec Corp., supra,* 56 Cal. App.3d 525 to the extent that it is inconsistent with this opinion."

The awards to the attorney witnesses can be viewed either as attorney's fees or as witness fees. In either event, the general policy of the law is that they are not recoverable and no specific exception is applicable.

If we view the awards as attorney's fees to the attorneys representing themselves in moving to quash the subpoenas, the impropriety of awarding them as a sanction is established by the decision in *Bauguess* which dealt with that specific type of fee.

If, instead, we view the award as an award of witness fees, the result is the same. The general policy of the law is stated by Government Code section 204 which provides: "The State may require services of persons, *with or without compensation*: In military duty; in jury duty; *as witnesses*; as town officers; in highway labor; in maintaining the public peace; in enforcing the service of process; in protecting life and property from fire, pestilence, wreck, and flood; and in other cases provided by statute" (italics added) and by Government Code section 68093, which provides: "*Except as otherwise provided by law*, witness' fees for each day's actual attendance, when legally required to attend upon the superior, municipal, and justice courts, are twelve dollars ($12) a day and mileage actually traveled, one way only, twenty cents ($0.20) a mile. In criminal cases such per diem and mileage are discretionary and shall only be allowed upon a showing that the allowances are necessary for the expenses of the witness in attending. The court may disallow any fees to a witness unnecessarily subpoenaed." (Italics added.)

In accordance with these enactments, the courts have consistently denied witness fee awards where there was no specific statutory authorization. In *McClenahan* v. *Keyes* (1922) 188 Cal. 574, 584 [206 P. 454], the court said: "The law fixes the fees of a witness and the only obligation incurred in the summoning of a witness is the obligation to pay the fees which the law fixes for the attendance of a witness. If there is any further or additional obligation it must arise from an express contract relating to the particular subject of the testimony and based upon the fact that the witness is required to use his expert knowledge in testifying."

A comparable statement appears in *Naylor* v. *Adams* (1911) 15 Cal. App. 353, 356 [114 P. 997], where the court said: "The right of a wit-

ness to mileage and other fees in civil cases is purely and solely of statutory creation, and a court is without the power to saddle on the vanquished party in such cases costs which are not thus strictly authorized."

The right of witnesses to receive compensation in excess of that stated in Government Code section 68093 is "otherwise provided" in several statutes. Penal Code section 1329 makes specific provision for such fees in criminal cases.[1] A witness in a criminal case who loses compensation can be paid more than the $12 provided by Government Code section 68093, but there is a limit of $18 and "[t]he sum is a county charge."

There also are specific provisions for compensating expert witnesses. Where an expert is appointed by the court, Evidence Code section 730, subdivision (a), provides: "The court may fix the compensation for such services, if any, rendered by any person appointed under this section, in addition to any service as a witness, at such amount as seems reasonable to the court."

In that event, Evidence Code section 731, subdivision (a), provides: "In all criminal actions and juvenile court proceedings, the compensation fixed under Section 730 shall be a charge against the county in which such action or proceeding is pending and shall be paid out of the treasury of such county on order of the court."

---

[1]Penal Code section 1329 states: "(a) When a person attends before a magistrate, grand jury, or court, as a witness in a criminal case, whether upon a subpoena or in pursuance of an undertaking, or voluntarily, the court, at its discretion, if the attendance of the witness be upon a trial may be an order upon its minutes, or in any criminal proceeding, by a written order, direct the county auditor to draw his warrant upon the county treasurer in favor of such witness for witness' fees at the rate of twelve dollars ($12) for each day's actual attendance and for a reasonable sum to be specified in the order for the necessary expenses of such witness. The court, in its discretion, may make an allowance under this section, or under Chapter 1 (commencing with Section 68070), Title 8, of the Government Code, as it may deem appropriate. The allowances are county charges.

"(b) The court, in its discretion, may authorize payment to such a witness, if he is employed and if his salary is not paid by his employer during the time he is absent from his employment because of being such a witness, of a sum equal to his gross salary for such time, but such sum shall not exceed eighteen dollars ($18) per day. The sum is a county charge.

"A person compensated under the provisions of this subdivision may not receive the payment of witness' fees as provided for in subdivision (a)."

These Evidence Code provisions, however, have no application to the case at bench since the witnesses were not appointed as experts by the court. Had they been so appointed, their fees would have been payable by the county, not by petitioner.

Compensation of experts not appointed by the court generally must "be paid by the party calling them. . . ." (Evid. Code, § 733.) However, there is no provision for the court to set the amount of their compensation in the proceedings in which they testify other than in civil actions. Government Code section 68092.5 deals specifically with this subject but its provisions are limited to experts who are subpoenaed "in any civil action or proceeding." The fees so awarded are payable "by the party requiring such witness to attend . . . ." (*Ibid.*) It is, however, apparent that the Legislature has designedly made this provision inapplicable to criminal and juvenile court proceedings. It appears in a chapter entitled "General Provisions" within the title "The Organization and Government of Courts." It would have been applicable in criminal cases had the express limitation to civil actions not been inserted. The conclusion is inescapable that the Legislature withheld such authority from the court in criminal proceedings.

There is yet another statute applicable to civil actions which expressly authorized fee awards in connection with the quashing of subpoenas. Code of Civil Procedure sections 1987.1 and 1987.2 (enacted in 1976) provide: "When a subpoena requires the attendance of a witness or the production of books, documents or other things before a court, or at the trial of an issue therein, the court, upon motion reasonably made by the party or the witness, or upon the court's own motion after giving counsel notice and an opportunity to be heard, may make an order quashing the subpoena entirely, modifying it, or directing compliance with it upon such terms or conditions. In addition, the court may make any other order as may be appropriate to protect the parties or the witnesses from unreasonable or oppressive demands." (§ 1987.1.)

"In making an order pursuant to motion made under subdivision (c) of Section 1987 or under Section 1987.1, the court may in its discretion award the amount of the reasonable expenses incurred in making or opposing the motion, including reasonable attorneys' fees, if the court finds the motion was made or opposed in bad faith or without substantial justification or that one or more of the requirements of the subpoena was oppressive." (§ 1987.2.)

If applicable to criminal proceedings, these sections would support respondent court's authority to make the order under review. It does not, however, appear that they are intended to apply in criminal actions.

The fact that the above sections are in the Code of Civil Procedure is not determinative. Many of its provisions are applicable to criminal proceedings. As our Supreme Court said in *Lewis* v. *Dunne* (1901) 134 Cal. 291, 293-294 [66 P. 478]: "Now, what is the Code of Civil Procedure? It is merely a name given to a large part of the general laws of the state. The part of the great body of our laws which is to be found under that name is not confined to any particular subject or subjects, but includes substantive law, criminal law, and legislation, that might be properly classed under any category whatever,—as well as 'civil procedure.'"

However, the placement of these sections in a chapter, some provisions of which cannot be applied in a criminal case, while leaving unchanged a comparable chapter of the Penal Code covering the same general subject matter, clearly indicates the intent to limit the new provisions to civil actions.

Chapter 2 of title 3 of part 4 of the Code of Civil Procedure, comprising sections 1985 through 1997, provides for the production of testimony and documentary evidence by the use of subpoenas. In section 1985, it defines subpoenas as "[t]he process by which the attendance of a witness is required..." and mandates that if a subpoena duces tecum is employed, an affidavit "showing good cause for the production of the matters and things described in such subpoena" shall be served with the subpoena. An official form of subpoena is set forth; the effective reach of subpoenas is set at 150 miles, and penalties for "disobedience" are provided.

These same subjects are also covered in chapter 3 of title 10 of part 2 of the Penal Code, comprising sections 1326 through 1333. Though the same subject matter is covered, different provisions are made. Section 1326 of the Penal Code likewise defines a subpoena as "[t]he process by which the attendance of a witness before a court or magistrate is required..." but it states no requirement for an affidavit showing good cause for the production of documents, even though section 1327 specifically includes in the form of subpoena an alternative clause requiring the witness to bring documents. Provisions comparable to those contained in the corresponding chapter of the Code of Civil Pro-

cedure relating to the reach of subpoenas and the penalty for disobedience are incorporated. But there is no provision corresponding to Code of Civil Procedure sections 1987.1 and 1987.2.

Power to quash subpoenas in criminal cases, where the witness could offer no relevant testimony, was established by case law before the 1976 amendments to the Code of Civil Procedure. (See *In re Finn* (1960) 54 Cal.2d 807, 813 [8 Cal.Rptr. 741, 356 P.2d 685]; *People v. Rhone* (1968) 267 Cal.App.2d 652, 657 [73 Cal.Rptr. 463].) These cases did not, however, deal with the court's power to impose sanctions in connection with quashing subpoenas.

It must also be borne in mind that at the time of the enactment of Code of Civil Procedure sections 1987.1 and 1987.2, our Supreme Court had decided *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 536 [113 Cal.Rptr. 897, 522 P.2d 305], holding civil discovery procedures inapplicable in criminal cases and specifically rejecting the affidavit requirement of Code of Civil Procedure section 1985.

The Legislature, moreover, was confronted with the requirements of article I, section 15 of our state Constitution, paragraph 2 of which guaranteed criminal defendants the right "to compel attendance of witnesses in the defendant's behalf." It probably considered the imposition of sanctions for an attempt to exercise this right might tend unduly to chill the vigor of the defense which would be undertaken in behalf of criminal defendants.

Considered in combination, the foregoing factors compel the conclusion that Code of Civil Procedure sections 1987.1 and 1987.2 apply only in civil matters. It appears, therefore, that in criminal cases there is no statutory exception to the general rule limiting the compensation of witnesses to statutory fees.

Respondent court has, moreover, pointed to no recognized equitable exceptions to this general rule. Consequently, under the rule in *Bauguess*, we conclude that an award of fees to the attorney witnesses was not authorized as a sanction under the court's inherent power to control proceedings.

■ *Procedure Necessary to Find Petitioner in Contempt Was Not Followed*

Abuse of the court's process by the misuse of subpoenas is punishable as a contempt. As stated in Code of Civil Procedure section 1209: "The following acts or omissions in respect to a court of justice, or proceedings therein, are contempts of the authority of the court:

".     .     .     .     .     .     .     .     .     .     .     .     .     .     .

"4.   Abuse of the process or proceedings of the court, . . ."

It is apparent, therefore, that petitioner's misuse of the court's subpoena power might have been the basis for contempt proceedings against him resulting in the imposition of sanctions. It is apparent, however, that any contempt of petitioner in abusing the subpoena process was committed out of the presence of the court. Consequently, the procedural safeguards relating to indirect contempt were applicable. In *Bauguess v. Paine, supra*, 22 Cal.3d at page 638, our Supreme Court noted: "[A] court's inherent power to punish contempt has been tempered by legislative enactment to provide procedural safeguards. (Code Civ. Proc., § 1209 et seq.; see *In re McKinney*(1968) 70 Cal.2d 8, 11-13 [73 Cal.Rptr. 580, 447 P.2d 972]; cf. *In re Oliver* (1948) 333 U.S. 257, 274-276 [92 L.Ed. 682, 694-696, 68 S.Ct. 499].) Among these safeguards is the opportunity, in cases where the contempt occurs out of the immediate view and presence of the court, to disqualify the judge pursuant to Code of Civil Procedure section 170, subdivision 5. (See 1 Witkin, Cal. Procedure (2d ed. 1970) Courts, § 62, pp. 341-342.) Additionally, the Legislature has limited the penalty for civil contempt to five days in jail and a $500 fine. (Code Civ. Proc., § 1218; *In re McKinney, supra*, 70 Cal.2d at p. 10.) Absent such safeguards, serious due process problems would result were trial courts to use their inherent power, in lieu of the contempt power, to punish misconduct by awarding attorney's fees to an opposing party or counsel."

The fact that the trial judge who "had not personally observed appellant's alleged misconduct. . .heard the sanctions motion" (*Bauguess v. Paine, supra*, 22 Cal.3d at p. 639) was held to foreclose reliance upon the contempt power as a basis to sustain the sanction.

Another procedural safeguard provided by Code of Civil Procedure section 1211 "[w]hen the contempt is not committed in the immediate view and presence of the court . . ." is the requirement that proceedings be initiated by "an affidavit. . .presented to the court or judge of the

facts constituting the contempt, or a statement of the facts by the referees or arbitrators, or other judicial officers."

"A proceeding for the punishment of an indirect contempt is commenced by the presentation of an affidavit setting forth the alleged contemptuous acts. (Code Civ. Proc., § 1211.) The affidavit is in effect a complaint, frames the issues before the court and is a jurisdictional prerequisite to the court's power to punish. (*In re Felthoven*, 75 Cal. App.2d 465 [171 P.2d 47]; *John Breuner Co.* v. *Superior Court*, 112 Cal.App.2d 304 [246 P.2d 694]; *Uhler* v. *Superior Court*, 117 Cal. App.2d 147 [255 P.2d 29, 256 P.2d 90].)" (*In re Gould* (1961) 195 Cal.App.2d 172, 175 [15 Cal.Rptr. 326].)

There was no such affidavit in this case. It is thus apparent that the order under review cannot be sustained as an exercise of the court's power to punish contempt.

DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order imposing sanctions against petitioner and in favor of Robert Bankowski and Robert Schoonenberg in the amount of $150 each, and in favor of Bruce Wolfe in the amount of $75.

Klein, P. J., and Cobey, J., concurred.