[Civ. No. 59689. Second Dist., Div. One. Dec. 22, 1980.]

In re the Marriage of MARGIE L. and JOHN R. LEMEN.
JOHN O. GOODMAN et al., Appellants, v.
LEONARD GLUSMAN, Respondent.

774

COUNSEL

John O. Goodman and Robert K. Dorsey, in pro. per., for Appellants.

Glusman & Glusman and Paul Glusman for Respondent.

OPINION

AUERBACH, J.*—

### Statement of the Case

The appellants in this case are John O. Goodman (Goodman) and Robert K. Dorsey (Dorsey). Goodman is a nonparty witness who appeared at a deposition. Dorsey is the lawyer who represented him in that proceeding. The deposition was taken in connection with an order to show cause for a modification of child support, attorney's fees and

---

*Assigned by the Chairperson of the Judicial Council.

costs, filed by Margie L. Lemen in the underlying case entitled "In re Marriage of Petitioner John R. Lemen and Respondent Margie Lemen," in the Los Angeles Superior Court. The appeal is from an order compelling discovery and imposing sanctions on Dorsey and Goodman.

## Statement of Facts

In the underlying case, a judgment of dissolution of marriage between John R. Lemen (Lemen) and Margie L. Lemen was entered in 1977. In 1979, Margie Lemen sought an increase in child support. Goodman is trained in accountancy and is a financial management consultant whose offices perform bookkeeping services for John R. Lemen, a professional corporation. Lemen is the attorney for the corporation bearing his name. Respondent Leonard Glusman (Glusman), attorney for Margie Lemen, was aware that Goodman was represented by Dorsey. In connection with Margie Lemen's motion for modification of child support, Glusman set the deposition of Goodman pursuant to an oral arrangement with Goodman alone. The deposition was set for September 11, 1979, at Glusman's offices.

Goodman appeared at the deposition with Dorsey. Lemen also appeared at the deposition. Lemen had received no notice of the deposition and attempted at the outset of the deposition to object to lack of proper notice. The first 15 pages of the deposition consist of what may be characterized as a cat-and-mouse game between Lemen and Glusman as to whether Lemen would waive the 10-day notice requirement. Both Dorsey and Goodman stated they were ready to proceed and Goodman insisted that he be deposed that day because he had arranged his affairs to be available. Goodman demanded and received his witness fee. Lemen ultimately remained and participated in the deposition. At the deposition, Goodman refused to answer about 28 questions, at times as instructed by Dorsey and at other times at his own insistence.

On September 21, 1979, Margie Lemen filed a motion to compel answers, to restrain concealment of evidence, and for sanctions against Lemen, Goodman, and Dorsey. It takes up about 43 pages of reading matter in the clerk's transcript. The motion was timely served by mail upon Lemen and Dorsey; apparently, a copy of the motion was placed in Goodman's mail slot on October 1, 1979, eight days before the hearing of the motion. On October 4, 1979, appellants filed their opposition

papers, consisting of about 90 pages of reading matter, not counting Lemen's response. Among the points raised by Goodman was that the court had no jurisdiction to grant the relief requested, that the sanctions requested were not authorized by law, that respondent is entitled to no relief on the merits, and that Goodman, in turn, is entitled to sanctions against Margie Lemen and Glusman. He requested attorney's fees of $1,500 for opposing the motion. Dorsey also objected on jurisdictional grounds and requested sanctions of $1,500 in attorney's fees.

On October 9, 1979, Margie L. Lemen's motions were transferred from the master calendar to the court of Judge Goebel. On that same date, appellants filed additional opposition papers and respondents filed an answering declaration. Judge Goebel continued the hearing on the motions to October 10, 1979.

On October 10, 1979, Judge Goebel, after having spent a long period of time reading the mass of documents, including the Goodman deposition, issued a tentative ruling which ordered that some 21 questions be answered by Goodman and imposed sanctions of attorney's fees and costs in the amount of $1,650 allocated in the sum of $550 each as to Lemen, Dorsey and Goodman. Judge Goebel announced that he would hear no argument on the discovery matter but would allow oral argument on the matter of sanctions and jurisdiction. After extended argument, Lemen was deleted from the tentative ruling imposing sanctions. The hearing was then continued to October 11, 1979. At one point in the hearing of October 11, 1979, Dorsey advised the court that Goodman thought there might be a conflict of interest between them and that he wished to address the court directly. The court refused to hear from Goodman as long as he was represented by Dorsey. He said he would have considered it if Dorsey were not his counsel. After further argument, the case was trailed to October 12, 1979. At both hearings, Goodman and Dorsey, among others, objected to the form of service of notice without an order to show cause, and urged that the court had no jurisdiction to hear the motion.

On October 12, 1979, just prior to the continuation of proceedings, Goodman and Dorsey filed and served separate declarations of actual bias against Judge Goebel, pursuant to Code of Civil Procedure section 170, subdivision 5. Judge Goebel ordered the declarations to be stricken. He did so on the grounds that the documents were not timely filed and that, in his language, "[t]his matter has been heard and determined. After a Court makes a decision, and after a Court states the

basis of its decision, to then say this Court is prejudiced by reason of the fact that it has heard the case, is not only ridiculous, but it's absurd." On the same date, the court issued its minute order finding that petitioner Goodman and Dorsey "acted in concert to thwart legitimate discovery." He found that the matter of notice raised by Goodman and Dorsey was waived by their appearance. The court found that Goodman and Dorsey "wilfully, and without substantial justification, refused to answer questions, and caused the witness to fail to answer questions; that such conduct made the within motion necessary." The court ordered Goodman and Dorsey each to pay to Glusman the sum of $550 as sanctions. He ordered Goodman to appear in his courtroom for the purpose of completing his deposition, adopting this procedure so that he would be immediately available to make rulings on all objections to avoid expense and delay to the parties.

On October 15, 1979, the order of October 12, 1979, was corrected nunc pro tunc to reflect that the payment of sanctions was stayed to November 7, 1979. On November 7, 1979, appellants moved to reconsider the order imposing sanctions. After argument, it was denied.

### Issues on Appeal

Appellants argue that error occurred in the following areas:

1. The court erred in exercising jurisdiction because of defects in noticing Goodman's deposition, defects in notice of motion, and defects in serving notice of motion.

2. The court erred in awarding sanctions not authorized by statute.

3. The court erred in the amount of the sanctions.

4. The court erred in refusing Goodman and Dorsey the right to argue the merits and the amount of sanctions and in prohibiting Goodman from speaking on his own behalf at the hearing.

5. The court erred in striking the declarations of actual bias by Goodman and Dorsey without requiring the hearing as required by law, making void its subsequent order.

# I

## *The Court Did Not Err in Exercising Jurisdiction*

### A.  *Any Error in Noticing Goodman's Deposition Was Waived*

The record shows that Goodman and Dorsey both appeared at, and participated in, the deposition despite lack of notice. Goodman demanded, received, and cashed the check for his witness fee. The date for the deposition had been picked by Goodman himself. Goodman and Dorsey both stated that they wished to proceed with the deposition at the time and place it was held. It is too fundamental to require citation of authority that such conduct constitutes a waiver of notice.

### B.  *Goodman Waived the Requirement of 10 Days Notice*

Code of Civil Procedure section 1005 requires that service must be had not less than 10 days before the hearing of the motion. Goodman received only eight days notice. However, three days after he was served, he filed a voluminous opposition to the motion, objecting not only to jurisdiction, but asking for other relief which could properly be given only if the court had jurisdiction of his person, such as denial of the plaintiff's request for sanctions on its merits and attorney's fees for himself. This constituted a general appearance. (*Lacey* v. *Bertone* (1949) 33 Cal.2d 649, 652 [203 P.2d 755].) If Goodman "...wished to make a special appearance, he should have relied solely on the lack of proper notice as specified in the first ground of his motion." (*Id.* at p. 652.) In addition, Goodman filed a motion to disqualify Judge Goebel under Code of Civil Procedure section 170, subdivision 5, which limits its availability to "any party to such action or proceeding who has appeared therein." That motion constituted a general appearance (*Donovan* v. *Superior Court* (1952) 39 Cal.2d 848, 851 [250 P.2d 246]).

### C.  *A Show Cause Order Was Not Required to Compel Discovery and Impose Sanctions*

The court's power to impose sanctions in connection with discovery proceedings rests exclusively upon statutory grants of authority. That authority derives from Code of Civil Procedure section 2034, subdivision (a), which provides in part as follows: "If a party or other deponent refuses or fails to answer any question propounded upon examination during the taking of a deposition,...the examination shall be completed

on other matters or adjourned, as the proponent of the question may prefer. Such proponent, on notice to all persons affected thereby, may move the court in which the action is pending (if the deponent is a party or otherwise subject to the jurisdiction of such court),...for an order compelling an answer.... If the motion is granted...[and] [i]f the court finds that the refusal or failure or objection was without substantial justification or that the answer does not comply with the requirements of Section 2033, the court may require the refusing or failing or objecting party or deponent and the party or attorney advising the refusal or failure or objection or any of them to pay to the examining party the amount of the reasonable expenses incurred in obtaining the order, including reasonable attorney's fees...."

■ It is clear that section 2034, subdivision (a), explicitly provides that the order imposing sanctions may be against a nonparty. There is no requirement that the notice of hearing be given by way of an order to show cause. The holding in *Lund* v. *Superior Court* (1964) 61 Cal.2d 698 [39 Cal.Rptr. 891, 394 P.2d 707], is not to the contrary. In *Lund*, the court was concerned with the power of a court to impose sanctions on a nonparty, without formal contempt proceedings instituted by an order to show cause, for the failure of the nonparty to *appear* at a deposition. At bench, Goodman subjected himself to court jurisdiction by appearing for his deposition with his attorney and refused to answer proper questions. In recognizing that the manner of bringing a defaulting party before the court in the first instance is by notice of motion, the *Lund* court stated: "But the code section [2034, subd. (a)] specifically limits notice of motion as the proper procedure to institute sanctions against parties (including their officers, directors, superintendents, members, agents, employees, and managing agents), and persons for whose immediate benefit the action is brought or defended (*id.*, subd. (b)(2)), *or against deponents who have subjected themselves to court jurisdiction by appearing for deposition and thereafter refuse to answer proper questions (id.,* subd. (a))." (*Id.* at pp. 712-713.) (Italics added.) The italicized language precisely describes the posture of Goodman in this matter. A notice of hearing pursuant to an order to show cause was not necessary because the court did not purport to punish appellants under its contempt powers, but acted to employ the sanctions authorized by Code of Civil Procedure section 2034, subdivision (a), against Goodman and his attorney.

Appellants also complain that the court was ousted of jurisdiction to act because the notice, not being by way of an order to show cause, was

in derogation of the policy established by the rules for discovery enforced in the Los Angeles Superior Court. They cite rule 243B of the policy promulgated for the conduct of proceedings relating to discovery matters dealing with the manner of noticing a hearing upon failure of a nonparty witness to answer questions. The pertinent part of the rule reads as follows: "(2)(a) Proponent can have the deposition reporter order deponent to appear at a date certain at a specified time and place not less than 10 days nor more than 30 days from the date of such refusal; or [¶] (b) Proponent can wait until a time subsequent to the taking of the deposition and serve an order to show cause on the deponent personally. [¶] No matter which method of notice of hearing is used, the proponent must file and serve a copy of his motion on the deponent or his attorney."

This rule embodies local court policy and it is exceedingly desirable that it be followed by everyone affected. However, it is not jurisdictional in any fundamental sense. The rule represents a concern that nonparty deponents be fully apprised of the serious nature of the alleged default. The policy indicates alternate forms of notice of when and where to appear—an oral notice given by the reporter or a written notice of the time and place by an order to show cause. What is essential under either oral or written notice is that "the proponent must file and serve a copy of his motion on the deponent or his attorney." This rule was obviously designed to alleviate the type of problem described, and the apprehension expressed by the writer in California Civil Discovery Practice (Cont.Ed.Bar 1975) section 3.8, page 95: "If deponent is a nonparty witness, the preferable procedure to compel answers at a deposition is to serve the deponent personally with an order to show cause which requires his attendance in court. Often, a nonparty deponent fails to hire an attorney to represent him at a deposition and may not understand the effect of notice of motion served by mail. An order to show cause is much more explicit in requiring attendance in court and its personal service usually ensures that the deponent will attend the hearing (probably with an attorney) to defend against the request for an order. In view of the possible sanctions that may be imposed for failure to attend, this is a desirable procedure." This concern is out of place in this case. Goodman attended voluntarily and was represented by Dorsey; both were served with copies of the notice of the hearing and both responded with comprehensive documents in opposition. The claim of jurisdictional error is without substance.[1]

---

[1]Appellants state that the court was without jurisdiction to order Goodman to appear before the court for continued deposition on November 7, 1979. This matter is periph-

## II

*The Order Compelling Discovery and Imposing Sanctions Was Procedurally and Substantively Correct*

### A.   *There Was Ample Evidence to Support the Order for Sanctions*

The court's tentative ruling was to impose sanctions on Lemen, Goodman and Dorsey in the aggregate sum of $1,650. On October 12, the court ordered Goodman and Dorsey each to pay to Glusman the sum of $550 as sanctions after finding that "Mr. Goodman and Mr. Dorsey wilfully, and without substantial justification, refused to answer questions, and caused the witness to fail to answer questions; that such conduct made the within motion necessary." Appellants argue that the amount of sanctions was not justified, and assert that the court was not motivated to promote discovery but was using this large amount to punish. This contention is not supported by the record.

█ It has been noted that Code of Civil Procedure section 2034, subdivision (a), provides that attorney fees and expenses may be awarded when a motion to compel answers to a deposition is granted. Attorney's fees are allowed when a court finds that the objections to discovery are interposed without substantial justification. (*Frey* v. *Superior Court* (1965) 237 Cal.App.2d 201, 204 [46 Cal.Rptr. 747].) Where an award of costs is made, that assessment is limited to those fees and expenses which are related to the particular abuse of the discovery process which is before the court. (*Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 790 [149 Cal.Rptr. 499].) To justify such a statutory award directly against counsel, the evidence must show that his conduct is culpable. (*Weinkauf* v. *Superior Court* (1966) 64 Cal.2d 662, 665 [51 Cal.Rptr. 100, 414 P.2d 36].) In this case, the court found, in its minute order of October 12, 1979, from an examination of the papers on file and the reasonable inferences to be drawn, that Lemen, Goodman and Dorsey "acted in concert to thwart legitimate discovery." He found that Dorsey's conduct at the deposition went beyond his duty to protect Goodman from harassment and that he was a harassing element at the deposition.

We have examined the Goodman deposition and have determined that there is full evidentiary support for these findings. The conduct of

---

eral to this appeal. Goodman's deposition was in fact taken and completed and is a mooted issue.

Goodman and Dorsey appears part of a calculated course to frustrate the achievement of the legitimate purposes of discovery. Goodman in several instances played the role of an advocate and made objections to questions on his own motion. Dorsey used his objections to stifle discovery and to virtually bring the deposition to a grinding halt.

The opposition of Goodman and Dorsey to the motion to compel discovery was specious, replete with linguistic legerdemain, half truths and pettifoggery. As to the questions unanswered, appellants attempt to justify their objections principally on five grounds:

1. That those selfsame questions had been answered during a proceeding before Judge Healy on February 6, 1979. However, the questions asked and answered at that trial were not precisely the same as many of the questions propounded at the deposition. Furthermore, unlike the questions at the trial, which were limited to the issues before the court, the unanswered deposition questions were reasonably calculated to lead to the discovery of admissible evidence. (Code Civ. Proc., § 2016, subd. (b).)

2. That the line of questioning had been found "reprehensible" by Judge Healy. This reflects a misconception of the record in Judge Healy's court. Judge Healy used no such language. He merely refused to entertain a certain line of inquiry for lack of relevancy to the hearing before him, in the academic language normal under such circumstances. Judge Healy was not presiding over a discovery proceeding.

3. That the questions attempted to go behind the valid judgment of the court in former divorce proceedings. That is mere quibble. If answered, those questions would have had a tendency to lead to the discovery of admissible evidence with respect to the modification hearing for child support. They were questions designed to throw meaningful light on Lemen's assets.

4. That the questions related to an ego struggle between Glusman and Goodman. That objection is mere pseudopsychiatric rhetoric which requires no further, if we may use the word, analysis.

5. That the questions invaded the professional confidences of the John R. Lemen Law Corporation. That is inaccurate. No questions that

Judge Goebel ordered to be answered required material as to which an attorney-client privilege might attach.[2]

The record shows that Judge Goebel gave careful scrutiny to the misconduct at the deposition and had fully mastered the record reflected in the moving papers before him. Ample reason existed to compel discovery and to sanction the recalcitrant participants. ■ There was no requirement that Judge Goebel hear additional argument on the matter of compelling discovery, apart from the issues of sanctions and jurisdiction in which full argument was permitted. "It is, of course, the law, that a trial judge is not required to listen to oral arguments in support of a motion, but may, in his discretion, decide it solely on the basis of the supporting affidavits." (*Muller v. Muller* (1956) 141 Cal.App.2d 722, 731 [297 P.2d 789].) The affidavits and points and authorities on file comprehensively addressed all matters relating to the need for discovery and the court had spent a long time reviewing them. It was discretionary with the court on such a motion as to whether additional oral argument was to be permitted on whether the questions should be answered.

Having read the abortive deposition and become satisfied that discovery should be made after full briefing in the affidavits, the court, in proper exercise of its discretion, determined there was no need for an oral reiteration of the forensics in the documents before the court, as to whether Goodman should answer, since it could not have produced a countervailing order.[3]

---

[2]Judge Goebel was particularly sensitive to this problem. At the October 11 hearing, Lemen had asked for a protective order with respect to files which had been subpoenaed by Glusman. The court granted such an order, stating: "The court also acknowledges the duty I owe to your clients that they, first of all, not have their identity divulged. Secondly, that the court will not permit a fishing expedition...." Judge Goebel also stated: "The court was not going to permit someone to go through a lawyer's records," and said that he would conduct an *in camera* proceeding before letting Glusman see the records. Lemen responded to this as follows: "Your Honor, that is the most protective relief I could have ever asked for. That order satisfies anything that was worrying me about what was going on here. So I believe that the court has given me at least as much as I have asked for."

[3]We do not consider appellants' claim that the court's order requiring Goodman to answer some 21 questions is inconsistent with the protective order granted Lemen at the same time, which limited documents to be produced to a period after January 1, 1978. Our abstention is based, in part, on appellants' failure to designate as a part of this record the documents filed as a part of Lemen's motion. We do not overlook that the court might have changed the scope of such order had the answers at Goodman's resumed deposition made it necessary.

### B. *Goodman Had No Standing to Address the Court*

■ Appellants also urge that the court's failure to permit Goodman to speak on his own behalf was error. The incident occurred on the October 11 hearing. The record reflects that Dorsey told the court: "Mr. Goodman also called to my attention that he felt that he and I were— since we were both in effect defendants in these proceedings, he felt there was a conflict, and he would also like to be able to address the Court on his own behalf." The court denied the request, stating in part: "He's represented by counsel. If he wants to discharge you [Dorsey], that would be something else. The Court will worry about that at that time, not at the present time." This was not error. The court in a civil case was not required to hear directly from one represented by counsel. Goodman was given the opportunity to discharge his attorney, if he wished self-representation. This he did not do. In point of fact, such "conflict" is a figment of the imagination. Dorsey continued to represent Goodman on this appeal until oral argument, when Dorsey was substituted out as Goodman's counsel.[4]

### C. *The Court Did Nor Err in the Amount of Sanctions*

In tentatively assessing the amount of sanctions in the sum of $1,650, the court stated that it took into consideration the cost of the deposition (including reporter and witness fees) and the work done by Glusman and his lawyer-employee, Paul Glusman. The Glusmans' declaration showed that he claimed fees for six and three-quarter hours of his time at $125 per hour. Of the time listed, Glusman indicated that he spent an hour reviewing the transcript of the deposition of Goodman and a half hour in preparation of his declaration in support of the motion. The remaining 5 hours and 15 minutes deal with work preparatory for the deposition and the time spent at the deposition itself. He also estimated that the hearing would require an additional three hours of his time. The declaration of Paul Glusman, an attorney employed by Leonard Glusman, showed that he spent eight hours researching and composing the motion to compel discovery, and billed his rate at $100 per hour. Although not mentioned in the declaration, the occasion not yet having

---

[4]Appellants complain of the court's remarks when it refused to hear directly from Goodman as long as he was represented by Dorsey. The court stated: "Mr. Goodman's problem is that he's too loquacious. Had he kept his mouth shut—to be talking very candidly—at the deposition, he would not be here in this difficulty." Obviously this was a legitimate comment on the evidence deduced from his demeanor at the deposition. In forensic repartee with Glusman, he left his role as a witness to become an advocate. The court noted that this was a factor in creating his predicament.

arisen, the court could reasonably consider the attorney's time necessary to read and prepare responding argument to the appellants' opposition papers.

■ Appellants assert that the award on its face is punitive and cannot be rationalized or understood as an appropriate allowance. Citing *Johnson* v. *Superior Court* (1968) 258 Cal.App.2d 829, 840 [66 Cal. Rptr. 134], they argue that to the extent that any allowance is made for the work of Leonard Glusman in connection with the preparation for and taking of the deposition itself and for the purposes of the reporter at the deposition, apart from its possible transcription for the motion, such an allowance would be unauthorized. It is true that five of the six and three-quarter hours attributed to Leonard Glusman concerned matters relating to the preparation for and the actual taking of the deposition. At his rate of compensation, it would amount to about $525. Assuming that under *Johnson* v. *Superior Court, supra*, the court committed legal error in computing such services in its original award of $1,650, the final award of $1,100 in aggregate is infected with no such error, because it eliminates payment for any services presumably not compensable. The sum awarded compensates almost precisely for the amount of time (one and one-half hours) expended by Glusman in reviewing the deposition transcript and preparing his declaration, the eight hours devoted by Paul Glusman in preparing the motion to compel discovery, and for time in court to be spent on that motion (approximately three hours). The preparation of that motion was not a facile matter. It required setting out each of some 28 instances of refusal to answer, and then making an analysis of the question in terms of the issues raised. In addition, the court might well have awarded two or three hours for study of the opposition papers. Finally, and of compelling pertinence, it is not amiss to remark that in their opposition papers both Goodman and Dorsey asked for sanctions in the sum of $1,500. We assume this is a good faith evaluation of the attorneys' fees expended to resist the motion. The respondent clearly invested no less time and talent in making the motion in which he prevailed, and is worthy of condign compensation. We cannot, therefore, say that the sum of $1,100 by way of sanctions was an abuse of the court's discretion. This case is unlike *Welgoss* v. *End* (1967) 252 Cal.App.2d 982 [61 Cal.Rptr. 52], where the award of $1,000 in attorney's fees under Code of Civil Procedure section 2034 was disallowed as punitive since it sought to penalize plaintiff's dilatory conduct before defendant sought a motion to compel discovery.

Appellants' reliance on *Bauguess* v. *Paine* (1978) 22 Cal.3d 626 [150 Cal.Rptr. 461, 586 P.2d 942] (attorney misconduct causing mistrial); *Yarnell & Associates* v. *Superior Court* (1980) 106 Cal.App.3d 918 [165 Cal.Rptr. 421] (expense of resisting motion to quash service of process); and *Fabricant* v. *Superior Court* (1980) 104 Cal.App.3d 905 [163 Cal.Rptr. 894] (abuse of subpoena power) is misplaced. In each of those cases, the lower court purported to award attorney's fees under its inherent supervisory power but without statutory sanction to punish for misconduct, not brought as a contempt, in derogation of the traditional practice that each litigant bear his own attorney's fees, in the absence of an agreement or some equitable exception. (See *Prentice* v. *North Amer. Title Guar. Corp.* (1963) 59 Cal.2d 618, 620 [30 Cal.Rptr. 821, 381 P.2d 645].) At bar the sanctions were imposed under statutory authority.

## IV

### *The Declarations by Goodman and Dorsey Were Inadequate as a Statement of Actual Prejudice Against the Trial Judge and Were Rightfully Stricken*

A preliminary observation is appropriate. Judge Goebel was no stranger to the protagonists in the underlying dissolution proceeding. On January 2, 1979, he had imposed sanctions on respondent Glusman in the sum of $200 for failing to appear for Mrs. Lemen's deposition. He was aware of the somewhat poisoned atmosphere that militated against professional courtesy, cooperation and civility on the part of various participants in the postjudgment proceedings.

The hearing on the motion before Judge Goebel on October 10, 1979, was conducted after he had extensively studied all the evidence that the parties had to submit. Predicated on his appraisal of the evidence, the court issued its tentative ruling granting the motion to compel discovery and awarding sanctions. Thereafter, the argument on jurisdiction and sanctions covered 40 pages of reporter's transcript and resulted in Lemen being deleted from the sanctions order. On October 11, 1979, a hearing of short duration took place and the court stated that in view of Lemen's elimination from the sanctions order, "perhaps the Court will have to recalculate it to increase it to stay where it was with the amount. [¶] I'll hear from counsel on that at the appropriate time." Dorsey responded, "[w]e would like to be heard on that matter. I spoke

primarily to jurisdiction before. I would like to speak on the issue of sanctions." The court responded: "You may," and proceedings were adjourned to October 12, 1979.

On October 12, 1979, the hearing was resumed. Immediately prior to that hearing, Goodman and Dorsey had each lodged with the clerk declarations of objections to any further hearing on the continued motion by Judge Goebel on the ground of actual bias. (Code Civ. Proc., § 170, subd. 5.) The court ordered the declarations stricken. A copy of Goodman's declaration is attached hereto as exhibit A. The court made a protective order on Lemen's behalf. It ordered Goodman's deposition to be resumed in its own courtroom on November 7, 1979, a date mutually convenient to the participants. With respect to appearances on that date, the court stated: "If Mr. Dorsey intends to appear, he may do so. [¶] The Court makes no order relative to him [in connection with the Goodman deposition], because there was some indication Mr. Goodman may desire to appear in propria persona." The court also stated: "Now, we have only the matter left of the sanctions. The Court, in an effort to possibly exert a little bit of pressure on resolving this case, will let its tentative stand as to the matter of sanctions on Mr. Goodman and Mr. Dorsey subject, however, to either or both of them asking this Court at the time and place set for the deposition to reconsider the imposition of sanctions. I'll hear from counsel at that time."[5]

Appellants have not furnished us with a reporter's transcript of the proceedings of November 7, 1979. We are aware only that their motion for reconsideration of the order of October 12, 1980, compelling discovery and for sanctions was argued and denied.

Appellants argue that pursuant to Code of Civil Procedure section 170, subdivision 5, the trial judge should have suspended proceedings and referred the matter of his alleged disqualification to the presiding judge for determination and that his failure to do so invalidated his subsequent orders.

■ It is undoubtedly the law that since bias or prejudice of a judge may first make its appearance only after the commencement of a legal proceeding, a litigant is entitled to urge the ground of disqualification at that time (*Schorr v. Superior Court* (1980) 105 Cal.App.3d 568, 571 [164 Cal.Rptr. 478]), so long as it is done at the earliest practicable opportunity after the discovery of the facts. (*Oak Grove School Dist. v.*

---

[5]We refer to this language later in our discussion.

*City Title Ins. Co.* (1963) 217 Cal.App.2d 678, 703 [32 Cal.Rptr. 288].) If the disqualifying statement is legally sufficient in alleging facts constituting the bias and prejudice of the judge and the judge fails to file an answer thereto within five days as required by Code of Civil Procedure section 170, subdivision 5, *such facts* alleged in the statement must be taken as true and the judge becomes disqualified automatically. In *Pacific etc. Conference of United Methodist Church* v. *Superior Court* (1978) 82 Cal.App.3d 72, 86 [147 Cal.Rptr. 44], the court stated: "Bias is defined as a mental predeliction or prejudice; a leaning of the mind; 'a predisposition to decide a cause or an issue in a certain way, which does not leave the mind perfectly open to conviction.' [Citation.] Bias or prejudice consists of a 'mental attitude or disposition of the judge towards a party to the litigation,...' [Citation.] In order for the judge to be disqualified under Code of Civil Procedure section 170, subdivision 5, the prejudice must be against a particular party."

However, if the declaration of actual bias is legally insufficient as a ground of disqualification, it may be ignored or stricken from the files by the trial judge. (*People* v. *Sweeney* (1960) 55 Cal.2d 27, 35 [9 Cal.Rptr. 793, 357 P.2d 1049].) In the case of *In re Morelli* (1970) 11 Cal.App.3d 819 [91 Cal.Rptr. 72], the court undertook an exhaustive examination of the authorities which articulate the circumstances in which the judge accused of actual bias is excused from following the procedure proscribed by section 170, subdivision 5, calling for a reference of the matter of his alleged disqualification to the presiding judge for determination. After distilling the holdings of the various authorities, the *Morelli* court states (p. 843): ▮▮▮ "A motion for the reassignment of a hearing before a trial court, based on disqualification of a trial judge for cause (Code Civ. Proc., § 170, subd. 5), and the papers supporting it may be stricken from the files by the trial judge involved when all that said papers contain are: conclusions; references to copious transcripts without citation to specific excerpts; allegations of facts not pertinent or appropriate to the issues to be determined in the hearing; material not legally indicative of bias or prejudice, such as judicial opinions expressed in the discharge of litigation and legal rulings; judicial reactions based on actual observance in participation in legal proceedings; and references to circumstances so inconsequential as to be no indication whatsoever of hostility and nonprobative of any bias or prejudice." ▮▮▮ *Morelli* further teaches that appellate review of an unanswered declaration of prejudice does not permit a reviewing court to take cognizance of the analysis and explanations of the trial judge

that are otherwise a part of the record because "...these cannot be taken into consideration in determining whether the moving papers specified sufficient pertinent fact material to frame an issue and warrant a hearing before another judge. They are the type of thing that such another judge would consider in resolving the issue if it were put to him." (*Id.* at p. 845.)

■ With this in mind, we examine the allegations made in the declarations of Dorsey and Goodman. They are most fully expressed in the Goodman affidavit (exhibit A) which is a jeremiad of glittering generalities, subjective interpretations, conclusions and complaints about legal rulings and judicial responses to the evidence. The declaration quotes not a single statement, verbatim, made by the court.[6]

Applying the rules gleaned from *In re Morelli, supra,* 11 Cal.App.3d 819, to the Goodman declaration, we find the following insufficiencies:

1. Items[7] 1, 2, 3, and 10a and 10b—these refer to material not legally indicative of bias or prejudice, consisting of judicial opinions, expressed in discharge of litigation and legal rulings.

2. Items 4 and 10c—consist of references to valid legal rulings by the court in upholding his own jurisdiction, stating legal conclusion of declarant, and show no bias or prejudice against him.

3. Items 5 and 10e—these refer to declarant's objections to legal rulings on the evidence and consist of conclusionary allegations.

4. Items 6, 7 and 10d—these refer to objections only to a legal ruling based on the evidence before the court.

5. Items 8, 9, 10f and 10g—these consist of objections to legal rulings, objections to judicial reactions based on evidence, and the subjective frame of mind of the declarant.

---

[6]Even in their brief, appellants quote the exact language of the court in only one instance, which we have alluded to in footnote 5. The brief makes only three references to the transcript, one of which, on page 17, is in fact a statement by Lemen, and the other on page 42, is the reference to Goodman's loquacity mentioned earlier. The only other transcript reference is to page 13, which does not support the statement in the brief, which reads: "The sanctions entered against Goodman and Dorsey appear to be the highest in the Southwest District in this type of case and were explicitly entered by way of example, and not compensation." However, under the compulsion of *Morelli,* we do not use the record here, or elsewhere, to determine the sufficiency of the declarations.

[7]The references are to paragraph numbers.

6. Item 10—this is an omnibus recapitulation which reflects virtually all of the insufficiencies already dealt with and is further vitiated by declarant's conclusionary statement of the "effect" of the court's purported remarks.

The observations which we have made apply with equal force to the much more laconic declaration of Dorsey.

Threaded through the declarations of Dorsey and Goodman is the leitmotif that all of these alleged erroneous rulings and adverse comments by Judge Goebel with respect to the matters complained of, constitute bias. However, the law is clear that the state of mind of a judge based upon his observation of the witnesses and the evidence during the trial of an action even if he falls into legal error, does not amount to such prejudice which disqualifies the judge from continuing to preside over the proceedings before him. (*Kreling* v. *Superior Court* (1944) 25 Cal.2d 305, 312 [153 P.2d 734].)

We conclude that though replete with broadside accusations, the moving declarations are legally insufficient to show indications of personal bias or the existence of some fixed anticipatory prejudgment. Bereft of their gratuitously conclusionary overtones, the conduct reflected is that of a judge ruling within the accepted norms of the law upon the evidence before him. The declarations were properly stricken because it was unnecessary for another judge to decide Judge Goebel's qualifications to rule on the motion.[8]

### Disposition

For the reasons stated, the judgment is affirmed.

Spencer, P. J., and Lillie, J., concurred.

Petitions for a rehearing were denied January 16, 1981, and appellants' petition for a hearing by the Supreme Court was denied March 11, 1981.

---

[8]Leaving no vagrom stone unturned, appellants urge that Judge Goebel should have disqualified himself pursuant to Canon 3C(1)(a) of the Code of Judicial Conduct, which reads as follows: "A judge should disqualify himself in a proceeding in which his disqualification is required by law, or his impartiality might reasonably be questioned, including but not limited to instances where: [¶] (a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;..."

Our opinion on the issues on appeal shows that there is no factual basis for the operation of this canon. There is likewise no underpinning for the allegation that Judge

## Appendix A

The following is the declaration of John O. Goodman:

I, JOHN O. GOODMAN, a witness in this action, and a party Defendant to an Application for Discovery Order and Sanctions, declare that, by reason of the bias and prejudice of JUDGE GOEBEL against me, I cannot have a fair and impartial trial before the said JUDGE GOEBEL. Declarant objects to JUDGE GOEBEL's hearing a Motion for Discovery and Sanctions against him on such ground, and respectfully shows as follows:

1. At the commencement of a hearing before the aforesaid JUDGE GOEBEL at the courthouse, Department "F", Torrance, California, on October 10, 1979, the said JUDGE stated that, from examination of the moving papers, that he, the JUDGE, had concluded there was a conspiracy between the Petitioner, GOODMAN and GOODMAN's attorney to prevent discovery. There was no evidence of such conspiracy before the Court.

2. The Court thereupon stated all questions would be ordered answered, that a continued deposition would be held before him with the same deposition reporter, that questions would be answered as he ordered, or the examinee would be jailed.

3. The aforesaid JUDGE further stated that he would hear no argument on the merits, but only as to jurisdiction and the amount of sanctions.

4. The aforesaid JUDGE disregarded all rules of the Los Angeles Superior Court relating to the method of acquiring jurisdiction of such an application, i.e., *Los Angeles Discovery Rule 243B* and *Lund* v. *Superior Court* (1964) 61 C.2d 698, 39 Cal.Rptr. 891, 394 P.2d 707.

5. The Court fixed the total sanctions at *$1,650* to be divided three ways between Petitioner, GOODMAN, and GOODMAN's attorney. The Court, thereafter, released Petitioner from the sanctions, which were then to be divided between GOODMAN and GOODMAN's attorney.

6. On October 11, 1979, GOODMAN's attorney advised the Court that, since GOODMAN's attorney was a co-defendant to the demand for sanctions, that there was a conflict, and that GOODMAN wish to address the Court. The aforesaid JUDGE stated that, in order to speak, GOODMAN would first have to discharge his attorney, that GOODMAN's loquacious mouth had caused the problems, and GOODMAN was free to speak to see what additional trouble he'd get himself into.

7. It is respectfully pointed out that, at this point in the hearing, the Declarant had never had the opportunity to speak to the Court at all. Further, the Court refused to give this Declarant the opportunity to speak to it. Therefore, the only possible way that said Court could draw conclusions and bias that it demonstrated was by the moving papers on behalf of the Respondent, without giving the Declarant any opportunity to respond in Court to said moving papers. The Court, at this point, even more greatly disregarding that the purpose of *CCP § 2034(a)* is to secure discovery, and not to punish.

---

Goebel violated Canons 17 and 18 of the former Canons of Judicial Ethics which were superseded in 1974 by the adoption of the Code of Judicial Conduct. No useful purpose would be served in promulgating their text, so alien are they to any pertinent aspect of Judge Goebel's conduct.

8. GOODMAN's counsel pointed out to the aforesaid JUDGE that even if sanctions could be awarded, and even if all the declarations in Respondent's application were taken at face value, the amount enunciated by the Court was greatly in excess of that specified by statute and cases. (In fact, the proposed award is at least double conceivably allowable under the statute and cases.) The Court's only response was to state the amount of sanctions would be increased because of the release of Petitioner.

9. If the Declarant, JOHN O. GOODMAN, or his attorney, ROBERT DORSEY, had been allowed to address the merits, it would be shown that many of the questions approved by the Court were properly objected to. The aforesaid JUDGE overturned earlier Orders of other Judges, curtailing a line of questioning clearly having as its only purpose the bringing of administrative or criminal proceedings against the witness relevant to his licensing. (*Transcript of Hearing* held *February 6, 1979* in this action before Department "H", The Honorable JAMES F. HEALEY, JR., presiding, *page 27*.) The aforesaid JUDGE GOEBEL, again without argument, ordered Declarant to answer questions seeking to go behind earlier Judgments and Orders in this case and to questions fully answered previously before the Court.

10. The aforesaid JUDGE stated words to the effect that he liked to enter very large sanction orders, that he would not apply the rules of the Los Angeles Superior Court, that GOODMAN and his counsel must be punished for their conduct, and that, if GOODMAN did not answer questions in a deposition to be held before him with the same court reporter, that he, JOHN GOODMAN, would be jailed. In conclusion, Declarant cannot receive a fair or impartial hearing before JUDGE GOEBEL because:

a. Without a hearing on the merits, JUDGE GOEBEL has ruled he will punish Declarant for conspiracy by a large sanction order.

b. Neither Declarant, nor his attorney, could argue the merits of the Motion.

c. JUDGE GOEBEL stated that he would not follow the rules of the Los Angeles Superior Court.

d. In spite of the conflict between Declarant and his attorney as co-defendants, GOODMAN could not address the Court, as to address the Court would involve him deeper trouble with the Court.

e. The aforesaid JUDGE completely disregarded the criteria imposed by law for the amount of sanctions.

f. Neither Declarant, nor his attorney, can adequately argue the Motion for fear of being charged by the aforesaid JUDGE of contempt in the Court's presence.

g. At the deposition, the aforesaid JUDGE proposes to order, the JUDGE has already determined that, if he is dissatisfied with the manner in which GOODMAN answers any questions that he, the JUDGE, will jail GOODMAN and/or his attorney for failure to answer without consideration of any other remedy.

11. The prejudice of the aforesaid JUDGE was first learned *October 10, 1979* and *October 11, 1979*. Although the aforesaid JUDGE has indicated tentative rulings and his reasons therefore, the matter has not been submitted for decision.

In addition, the Court has entered into a hearing of no factual issues.

For the record, Declarant wishes to state emphatically that he has not conspired with Petitioner or Declarant's attorney to disrupt, block, or attempt to prolong discovery in the LEMEN v. LEMEN matter. Further, the Declarant states that he expected the assistance of the Court as is set out in the answer of the *third* question set forth in his *deposition* on *page 16*, commencing with *line 9 thru line 13*: "I don't like to give that home address out. You have my office address. My home address is confidential. My phone is unlisted and unless I am instructed to the contrary by a court, I don't see any relevancy in giving you my home address."

The Declarant respectfully submits that, while he expected assistance from the Court regarding Respondent's attorney and Respondent's attorney's questions, this particular JUDGE has chose to biasly disregard all of Declarant's rights and punish him, rather than assisting in this matter for the purpose of propounding discovery.

It is respectfully submitted that The Honorable JUDGE GOEBEL is and should be declared disqualified, and another Judge assigned for the hearing of the within cause.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on *October 12, 1979*, at Torrance, California.

/s/ _____
JOHN O. GOODMAN

### VERIFICATION

I, JOHN O. GOODMAN, am the witness and the Defendant in the Application of Respondent for Sanctions in the above-entitled matter. I have read the foregoing written statement for the disqualification for cause of The Honorable AUGUST GOEBEL as Judge, and know the contents thereof. The same is true of my own knowledge except as to those matters which are therein stated on information and belief, and as to those matters, I believe it to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this Declaration was executed on *October 12, 1979*, at Torrance, California.