[Civ. No. 42316. First Dist., Div. Four. Feb. 20, 1979.]

In re the Marriage of MARCIA A. and LAWRENCE A. AUFMUTH.
MARCIA A. AUFMUTH, Appellant, v.
LAWRENCE A. AUFMUTH, Appellant.

452

**COUNSEL**

Walter T. Winter and Barbara R. Dornan for Appellant Wife.

Morgan, Beauzay, Hammer, Ezgar, Bledsoe & Rucka, Paul E. Jacobs and Philip L. Hammer for Appellant Husband.

**OPINION**

**McGUIRE, J.***—Marcia Aufmuth (hereinafter wife) appeals from an interlocutory judgment dissolving the parties' marriage. Lawrence Aufmuth (husband) cross-appeals from certain provisions of the judgment.

The parties were married on August 19, 1967. Husband was then a law student and part-time clerk, and wife was a teacher. Wife worked until February 1969, when the first child of the marriage was born. During the marriage thereafter, she was a housewife. To enable husband to complete his third year of law school, the parties secured a student loan. The balance due on the loan was $1,230.98 when they separated.

*Assigned by the Chairperson of the Judicial Council.

In July 1971, the parties purchased a family residence for $66,500 with a down payment of $16,500. The $50,000 balance was paid from a real estate loan evidenced by a promissory note and a deed of trust executed by both parties. Title to the property was taken in both names and as community property, and all subsequent payments and costs connected with it were paid from community earnings during the marriage. The parties agreed at trial that the fair market value of the residence was $125,000, and that the balance on the house loan was $47,000, at that time.

In January, 1974, husband became a 5 percent shareholder in a corporate law firm in exchange for promissory notes which he executed in the sum of $16,300. His interest in the corporation was held subject to a repurchase agreement which fixed the purchase price of his stock according to a prescribed formula.

The parties separated on September 1, 1975. There were two children at the time of trial, ages four and seven.

In 1976, husband's gross salary was $63,000 with a net take-home of $37,300. He also received three quarterly bonuses and a fourth year-end bonus payable in September of each year.

The following determinations by the trial court are challenged by wife's appeal and husband's cross-appeal:

1. At the time the residence was purchased, wife had a separate property interest in it valued at $16,500 (the amount of the down payment) and the community interest in it was worth $50,000.

2. At the time of trial, wife's separate property interest in the residence was worth $31,014 and the community interest in it was worth $46,986.

3. Husband's legal education was not property to be valued for division purposes, but the loan for his legal education was a community obligation.

4. In valuing the 5 percent stock interest in the corporate law firm, the factor of goodwill was to be excluded and the value was to be set as of the time of trial and not the date of separation.

5. Wife was awarded $1,000 per month in spousal support, with no fixed termination date.

6. Wife was awarded $3,500 in attorney's fees.

## THE FAMILY RESIDENCE

Wife contends that the trial court erred in failing to find that the home is her separate property, subject to the community's right of reimbursement. She argues that where, as here, the down payment on a home is made entirely with separate property of one spouse, and the balance of the purchase price was obtained through a loan secured by that property, the home is the separate property of that spouse.

On the other hand, husband contends on his cross-appeal[1] that the trial court erred in failing to find that the equity in the home was entirely community property. He argues that wife failed to rebut the presumption that all property acquired during marriage is community property (*See* v. *See* (1966) 64 Cal.2d 778, 781 [51 Cal.Rptr. 888, 415 P.2d 776]; Civ. Code, § 5110), and that the down payment from wife's separate property should be treated as a gift to the community. Neither argument is well taken.

### *Character of the Down Payment*

■ All property owned by a husband or wife before marriage, and "that acquired afterwards by gift, bequest, devise or descent, with the rents, issues, and profits thereof," is the separate property of the acquiring spouse. (Civ. Code, §§ 5107, 5108; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 610 [122 Cal.Rptr. 79, 536 P.2d 479].) Property purchased with separate property funds is likewise the separate property of the acquiring spouse. (*In re Marriage of Mix, supra,* at p. 610.) Such separate property does not change its character as a result of the marriage or of its mere use in the marital relationship. (*Patterson* v. *Patterson* (1966) 242 Cal.App.2d 333, 340 [51 Cal.Rptr. 339].) Nor does separate property lose its character as such merely because of a change in form or identity. (*Id.; Thomasset* v. *Thomasset* (1953) 122 Cal.App.2d 116, 124 [264 P.2d 626].)

If property is separate at the time of its acquisition, "it remains so with the exception of such increase thereof as may have been due to the contribution of the community by virtue of capital or industry." (*Thomasset* v. *Thomasset, supra,* at p. 123.)

---

[1]With one exception, husband's contentions on his cross-appeal are mirror-images of wife's contentions on her appeal. They will therefore be taken up in relation to wife's contentions rather than separately.

■ There is a statutory presumption that property acquired by either spouse during marriage is community. (Civ. Code, § 5110; *See* v. *See, supra,* 64 Cal.2d 778 at p. 783.) This presumption is rebuttable (*In re Marriage of Mix, supra,* at p. 611), and it may be overcome by a preponderance of evidence. (*Patterson* v. *Patterson, supra,* 242 Cal.App.2d 333 at p. 341.) Whether or not the presumption has been rebutted is a question of fact for the trial court (*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 212 [259 P.2d 656]), and its findings must be upheld if supported by substantial evidence. (*In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 742 [145 Cal.Rptr. 205].) ■ The form of the instrument under which the parties hold title is not conclusive of the status of the property. (*Gudelj* v. *Gudelj, supra,* at p. 212.)

■ The evidence established that the source of the funds for the down payment on the residence was a savings account which was held in trust for wife by her parents in another state. There was testimony that at the time these funds were used for the down payment there was no intent by the parents or wife to make a gift to the community. At that time, and at all times prior to the commencement of the dissolution proceeding, neither party communicated with the other as to the property status of the funds used. Thus, although title to the property was taken in both names as community property, there is substantial evidence to support the trial court's finding that the down payment was and continued to be a separate property interest held by wife in the residence. This finding is supported on the basis of an adequate tracing of the wife's separate property. It need not be based on any understanding between the parties as to the separate property character of the down payment. (*In re Marriage of Mix, supra,* 14 Cal.3d 604 at p. 614.)

### *Classification of Balance of Purchase Price*

■ The trial court was also justified in determining that the balance of the purchase price on the home, obtained with a $50,000 loan, was paid from community funds.

The character of property acquired upon credit during marriage is determined according to the intent of the lender to rely upon the separate property of the purchaser or upon a community asset. (*Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202 at p. 210; *Hogevoll* v. *Hogevoll* (1943) 59 Cal.App.2d 188, 193-194 [138 P.2d 693].)

There is a presumption that the proceeds of a loan acquired during marriage are community property. (Civ. Code, § 5110.) The presumption

may be overcome only by a showing that the loan *was extended on the faith of existing separate property belonging to the acquiring spouse. (Estate of Ellis* (1928) 203 Cal. 414, 416 [264 P. 743]; *Estate of Abdale* (1946) 28 Cal.2d 587, 592 [170 P.2d 918].) In the absence of evidence tending to show this, the trial court must find in accordance with the presumption. (*Gudelj* v. *Gudelj, supra,* at p. 210.)

Although no testimony was presented concerning the intent of the real estate lender in extending credit to the parties, it is apparent that the credit was extended on the strength of the community earnings. Wife had no separate property other than the $16,500 before the purchase of the home, she was not employed, and she had no appreciable earnings. Husband was a practicing attorney at the time and his income was the sole source of support of the community. Under these circumstances, we decline to disturb the trial court's implied finding in accordance with the presumption that the proceeds of the loan were community funds.

### Separate and Community Property Interests in the Family Residence

It follows that both separate and community interests in the family home were established. ■ The presumption that all property acquired during marriage is community is controlling *only* when it is impossible to trace the source of the specific property. (*In re Marriage of Bjornestad* (1974) 38 Cal.App.3d 801, 806 [113 Cal.Rptr. 576].) Thus, "[w]here community and separate property are commingled and property is purchased with the mixed funds, . . . and each contribution is clearly ascertainable, the character of the funds remains unchanged. . . . There is both a community and a separate interest in property purchased with separate and community funds where each contribution is clearly ascertainable." (*Faust* v. *Faust* (1949) 91 Cal.App.2d 304, 309 [204 P.2d 906].)

The amounts of separate and community funds are ascertainable in the present case. As noted above, wife contributed $16,500 of her separate funds for the down payment on the home while the community contributed the balance of the purchase price in the amount of $50,000. Thus, the trial court correctly determined that wife had a separate property interest to the extent of her investment in the home and that the balance was community property.

## Computation of Separate and
## Community Interest in the Home

■ The parties agree that the separate and community interests are to be computed on a pro rata basis in direct proportion to the amounts of separate and community funds invested in the property (see *In re Marriage of Jafeman* (1972) 29 Cal.App.3d 244, 256-257 [105 Cal.Rptr. 483]), but each contends that the trial court erred in its application of this rule.

It was stipulated that the home had a fair market value of $125,000, an increase in value of $58,500 over the original $66,500 purchase price. The mortgage balance at the date of separation was $47,000. The community contributed $50,000, and wife contributed $16,500 of her separate funds, to the original purchase price. The community interest in the property was therefore 75.19 percent ($50,000 divided by $66,500), and the remaining 24.81 percent interest was wife's separate property, when the residence was acquired.

In accordance with this formula, the trial court found that "the present value of the $16,500 initial investment in said residence is $31,014 and the present value of the joint investment is $46,986." Although not expressly stated, it is apparent that the court calculated the $31,014 figure by adding the amount of capital appreciation attributable to separate funds (24.81 percent of $58,500) to the amount of the equity paid by separate funds ($16,500); the $46,986 figure, by adding the amount of capital appreciation attributable to community funds (75.19 percent of $58,500) to the amount of equity paid by community funds ($50,000 minus $47,000).

The alternative formulas advanced by husband and wife are both incorrect. Wife would have this court conclude that the community investment in the property could not exceed the amount by which community funds increased the equity in the home, or $3,000. This position is based upon the erroneous assumption that the proceeds of the real estate loan were wife's separate property. Husband, on the other hand, would have the court distribute the *total* equity in the home in strict proportion to the amounts of separate and community funds invested in the property (including taxes, maintenance and related expenditures), without regard to the increase in its fair market value. The effect of this position would be to give the community a 75 percent interest in wife's original $16,500 investment, which would deny her its full reimbursement.

SPOUSAL SUPPORT

Wife contends that the trial court's award of spousal support in the amount of $1,000 per month is so inadequate as to constitute an abuse of discretion in the circumstances of this case. She urges that the trial court failed to take into account (1) husband's ability to pay, (2) the unlikelihood of wife's employment as a teacher due to her inactivity in that field for seven years and the general unavailability of teaching positions, (3) the needs of the parties' young children in her custody and (4) the comparative financial positions of the parties before and after dissolution.

█ In fixing the amount of spousal support to be awarded upon dissolution of marriage, broad discretion is vested in the trial court (*In re Marriage of Morrison* (1978) 20 Cal.3d 437, 454 [143 Cal.Rptr. 139, 573 P.2d 41]), "and thus an appellate court must act with cautious judicial restraint, even though the particular award might appear on appeal to be modest or generous under the particular circumstances." (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 114 [113 Cal.Rptr. 58].) However, the discretion of the trial court is not unlimited. "[I]t must be exercised along legal lines, taking into consideration the circumstances of the parties, their necessities, and the financial ability of the husband." (*Brawman* v. *Brawman* (1962) 199 Cal.App.2d 876, 879-880 [19 Cal.Rptr. 106].)[2] An abuse of discretion will be perceived if, after calm and careful review of the entire record, it can fairly be said that no judge would reasonably make the same order under the same circumstances. (*In re Marriage of Lopez, supra,* at p. 114.)

█ The record indicates that in a pendente lite proceeding which concluded on June 21, 1976, wife requested and was awarded $1,000

[2]Civil Code, section 4801, subdivision (a), reads in pertinent part as follows:
"In any judgment decreeing the dissolution of a marriage . . . the court may order a party to pay for the support of the other party any amount, and for such period of time, as the court may deem just and reasonable. In making the award, the court shall consider the following circumstances of the respective parties:
"(1) The earning capacity and needs of each spouse.
"(2) The obligations and assets, including the separate property, of each.
"(3) The duration of the marriage.
"(4) The ability of the supported spouse to engage in gainful employment without interfering with the interests of dependent children in the custody of the spouse.
"(5) The time required for the supported spouse to acquire appropriate education, training, and employment.
"(6) The age and health of the parties.
"(7) The standard of living of the parties.
"(8) Any other factors which it deems just and equitable."
(See also *In re Marriage of Lopez, supra,* 38 Cal.App.3d 93 at pp. 116-117.)

spousal support. She was also awarded $500 per month child support for a total of $1,500 per month. Between June and October of 1976, wife accumulated from these payments savings of approximately $500 per month which yielded a total of approximately $2,800. The trial court could reasonably infer that she experienced no difficulty in living on support payments equalling the amounts she was awarded in the judgment. She had obtained part-time employment as a caterer by the time of trial, supplementing her income by an average of $132 per month. Under these circumstances, the award of $1,000 per month did not constitute an abuse of discretion by the trial court.

 Husband contends on his cross-appeal that the trial court abused its discretion in failing to order automatic termination of spousal support at the end of some reasonable period of time. He argues that in view of wife's earning capacity, her separate property, and her age (32) and good health, an award of spousal support for an unlimited period of time is unreasonable. This contention cannot be sustained.

It has never been held an abuse of discretion not to terminate jurisdiction over spousal support. (*In re Marriage of Wright* (1976) 60 Cal.App.3d 253, 256-257 [131 Cal.Rptr. 870].) The evidence in the present case does not warrant a departure from this rule. At the time of trial, wife was employed part-time as a caterer, earning between nothing and $200 per month (gross) as available business fluctuated. This was her sole source of income except for the support she received from husband. Her education and only professional experience were limited to teaching, but she had not been employed as a teacher since the birth of the parties' first child in 1969 and her efforts to find employment in this field had been unsuccessful. Moreover, her availability for full-time employment was limited by the needs and interests of the very young children in her custody.

Husband's reliance upon *In re Marriage of Morrison, supra,* 20 Cal.3d 437, is misplaced. That decision holds that a trial court should not terminate jurisdiction to extend a future support order, after a lengthy marriage, unless the record clearly indicates that the supported spouse will be able to meet his or her financial needs at the time selected for termination of jurisdiction. It does not support husband's proposition that in a marriage of relatively short duration, automatic termination of spousal support is required in the absence of a showing that wife will be unable to meet her financial needs.[3]

---

[3]Husband suggests that the Marin County Rules of Court provide reasonable guidelines regarding duration of support. Those rules provide that in a marriage lasting

The trial court's refusal to set an automatic termination date for spousal support does not impose an undue burden on husband. If wife fulfills his present predictions by becoming self-supporting in the future, he may then apply for an order modifying spousal support in light of changed circumstances. (Cf. *In re Marriage of Wright, supra,* 60 Cal. App.3d 253 at p. 257.)

## PROFESSIONAL EDUCATION AS A COMMUNITY ASSET

Wife next contends that the trial court erred in refusing to permit evidence regarding the value of husband's legal education as a community asset. She argues that his education must be treated as any other community asset which is to be valued and divided equally between the parties upon dissolution of marriage.

Preliminarily, we note that this issue is raised for the first time on appeal. The only mention of husband's education as a community asset at trial arose during wife's cross-examination of husband regarding his student loan.[4] Wife contended that the value of the education was a community asset which offset the community obligation owed Stanford University for husband's legal education. She nevertheless did not claim that a value in excess of the balance outstanding on the student loan should be placed upon husband's education, nor did she make any offer of proof by expert testimony to establish any value for the education. She is therefore precluded from raising this issue on appeal *except* to the extent that she seeks to offset the community obligation on the student loan by the value of husband's legal education. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 276, p. 4264; Witkin, Cal. Evidence (2d ed. 1966) Introduction of Evidence at Trial, § 1310 et seq., p. 1211 et seq.)

■ Wife contends that, to the extent husband's legal education was acquired during marriage, it is a community asset because it was obtained with community funds as well as the time and effort of both spouses. She argues that it is patently unfair to deny a wife the benefit of a husband's increased earning capacity where she has contributed to its development.

---

less than 12 years, termination of spousal support after a period equivalent to one-half the duration of the marriage may be reasonable. However, it is clear that California has "no policy which requires the period of spousal support to bear any particular proportion to the length of the marriage." (*Edwards* v. *Edwards* (1975) 52 Cal.App.3d 12, 15 [124 Cal.Rptr. 742]. See *In re Marriage of Brantner* (1977) 67 Cal.App.3d 416, 423 [136 Cal.Rptr. 635].)

[4] The trial court sustained husband's objection to the following question: "Do you think there is value to the legal education you got?"

A similar argument was rejected in *Todd* v. *Todd* (1969) 272 Cal.App.2d 786 [78 Cal.Rptr. 131]. In that case, the trial court stated that the value of an education as a claimed asset is " 'nothing $ -0-.' " (*Id.,* at p. 790.) Wife appealed the trial court's valuation of the asset. The Court of Appeal held that if a spouse's legal education can be said to be community property (a proposition which the court termed "extremely doubtful"), it is manifestly of such character that a value for division between the spouses cannot be placed upon it. (*Id.,* at p. 791.)

Wife invites this court to reexamine the twin issues of characterization and valuation of a spouse's professional education. She contends that the underlying rationale of the *Todd* court's conclusions is invalid. We are satisfied that the holding in *Todd* regarding characterization and valuation of a professional education is sound. It is well established that the word "property," as used in the statutes relating to community property, does not encompass every property right acquired by either husband or wife during marriage, such as the right to practice a profession. (*Franklin* v. *Franklin* (1945) 67 Cal.App.2d 717, 725 [155 P.2d 637].) It should be noted in the present case that, to the extent community assets were the product of husband's legal education, wife has realized their value in the award of these assets to her. Additionally, the trial court must have considered husband's earning capacity in awarding spousal and child support. (See *Todd* v. *Todd, supra,* 272 Cal.App.2d 786 at p. 791.)

The value of a legal education lies in the potential for increase in the future earning capacity of the acquiring spouse made possible by the law degree and innumerable other factors and conditions which contribute to the development of a successful law practice. A determination that such an "asset" is community property would require a division of postdissolution earnings to the extent that they are attributable to the law degree, even though such earnings are by definition the separate property of the acquiring spouse. As the court observed in *In re Marriage of Fortier* (1973) 34 Cal.App.3d 384, 388 [109 Cal.Rptr. 915]: "Since the philosophy of the community property system is that a community interest can be acquired only during the time of the marriage, it would then be inconsistent with that philosophy to assign to any community interest the value of the post-marital efforts of either spouse."[5]

[5]Our interpretation is in accord with the majority of cases in other jurisdictions. In *In re Marriage of Graham* (1978) 194 Colo. 429 [574 P.2d 75], the Colorado Supreme Court concluded that an education degree has none of the attributes of "property" in the usual sense of that term: "An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of 'property.' It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold,

## Exclusion of Goodwill as a Valuation Factor

Wife complains that the trial court failed to make a specific finding as to the existence or nonexistence of goodwill in its valuation of husband's interest in his law firm. However, she did not request a special finding on that issue: in her objections to husband's proposed findings of fact, she merely requested that the trial court find "That the Court does not find that 'goodwill' should be included as an element of value in determining the value of . . . [husband's] . . . interest in his law corporation." The trial court found in accordance with wife's request.

■ Unless a party requests special findings or otherwise brings to the attention of the trial court its failure to find on a material issue (Code Civ. Proc., § 634), the judgment will not be set aside because of a failure to make an express finding upon such issue if a finding on it, consistent with the judgment, results by necessary implication from the express findings which are made. (*Corrigan v. Stiltz* (1965) 233 Cal.App.2d 381, 384 [43 Cal.Rptr. 548].)

■ The trial court found that husband's interest in the law firm was limited to the fair market value of his shares in the firm, computed in accordance with the formula set forth in the stock purchase agreement, and that the agreement was an arm's length transaction. Implicit in these findings is a determination that husband had no goodwill interest of any value in the law firm. The further finding that goodwill should not be considered as an element in the value of husband's interest is likewise consistent with an implied finding that goodwill was nonexistent. Under these circumstances, the judgment cannot be set aside for failure to issue findings as to the existence of goodwill as a community asset.

---

transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property." (*Id.,* at p. 77.)

The New Jersey Supreme Court has likewise held that a person's earning capacity, even when enhanced by a law degree financed by the other spouse, "should not be recognized as a separate, particular item of property." (*Stern* v. *Stern* (1975) 66 N.J. 339 [331 A.2d 257, 260].)

We recognize that the Iowa Supreme Court recently held that the potential for increase in future earnings made possible by a law degree conferred upon the husband, with the aid of his wife's efforts, constitutes an asset which may be considered by the court in determining an equitable distribution of assets and property although the legal education and license to practice are not assets to be valued and distributed upon dissolution of a marriage. (*In re Marriage of Horstmann* (Iowa 1978) 263 N.W.2d 885, 891.) The reasoning in that decision is not persuasive, and we decline to follow it.

Wife also challenges the trial court's finding that goodwill should not be included as an element of the value of husband's interest in the law firm. The stock purchase agreement provides a formula governing the purchase and sale of shares in the corporation in accordance with the rule that, as between attorneys, an attempted sale of goodwill in a law practice is void as contrary to public policy. (*Geffen* v. *Moss* (1975) 53 Cal.App.3d 215, 225-227 [125 Cal.Rptr. 687, 79 A.L.R.3d 1232].) The formula specifically excludes any allowance for goodwill. Charles Ledworth, an accountant called by husband, testified that, in his opinion, the law firm does not have a value beyond that expressed in the formula. At the time of trial, husband was 31 years old and had been a member of the bar for only 7 years. He had been a member of his law firm for just five years, and a shareholder for only two years. In view of his youth and comparative inexperience, the trial court could reasonably conclude that he had not contributed in any substantial way to whatever goodwill the law firm might possess. These factors support the court's determination that goodwill was not to be considered in evaluating his interest in the firm.

Wife contends that husband's economic potential earning capacity and expectation of future professional income constitute professional goodwill, and are subject to division by the trial court. However, numerous cases have rejected such an interpretation of goodwill. "[*I*]*n marital cases, the expectancy of future earnings is not synonymous with, nor should it be the basis for, determining the value of 'goodwill' of a professional practice, but is simply a factor to consider in deciding if such an asset exists.*"[6] Furthermore, it would be anomalous to value a community asset solely upon the "postmarital efforts of either spouse." (*In re Marriage of Lopez, supra,* 38 Cal.App.3d 93 at pp. 108-109 [original italics].)

### COMPUTATION OF HUSBAND'S INTEREST IN THE PROFESSIONAL CORPORATION

#### Date of Valuation

The trial court found that under the formula set forth in the stock purchase agreement, husband's share in the law firm had a value of

---

[6]Factors which may be considered in determining the existence or nonexistence of goodwill include the practitioner's age, health, past demonstrated earning power, professional reputation in the community as to his judgment, skill, knowledge, his comparative professional success, and the nature and duration of his business as a sole practitioner or as a member of a partnership or professional corporation to which his professional efforts have made a proprietary contribution. In addition, consideration should be given to the value of the fixed and other assets of the professional business with which the goodwill is to continue its relationship. (*In re Marriage of Lopez, supra,* 38 Cal.App.3d 93 at pp. 109-110.)

$23,549 as of the date of the parties' separation and a value of $35,096 as of the time of trial. The increased value of the shares was primarily attributable to work done by husband and other members of the law firm after the parties separated in September, 1975. A small portion of the increase was also due to a contribution of capital by one of the new shareholders. The court awarded husband's shares to him at a community property value of $35,096.

Husband argues that the trial court was required to value the community interest in the shares as of the date of separation, rather than the date of trial. Relying upon Civil Code section 5118,[7] he contends that the increase in value of the shares after separation is his separate property.

As a general rule, asset values and liabilities should be determined as near to the date of trial as reasonably practicable. (*In re Marriage of Lopez, supra,* 38 Cal.App.3d 93 at p. 110.) Civil Code section 5118 does not change this rule, but merely provides in effect that the postseparation earnings and accumulations of the spouses cannot be characterized as community property. (*In re Marriage of Imperato* (1975) 45 Cal.App.3d 432, 436-437 [119 Cal.Rptr. 590].) Thus, "[i]f the earnings of a spouse [after separation] in some manner increase the value of a community asset, the court must then determine what portion of the asset is community property and what portion is separate property . . . . Valuation on date of separation is important only when it is used in conjunction with the final valuation for apportioning community and separate property." (*Id.,* at p. 436.)

Husband's contention that the increase in value of the shares should be considered as postseparation earnings or accumulations, within the meaning of Civil Code section 5118, is without merit. As the *Imperato* court observed, "[t]he word 'earnings' is broader in scope than 'wages' and 'salary.' It can encompass income derived from carrying on a business *as a sole proprietor* where the earnings are the fruit or award for labor and services without the aid of capital . . . . [¶] In contrast, *the earnings of a corporation are not, generally speaking, the earnings of the individual stockholder or stockholders,* but are 'profits' of the corporation to be distributed usually in the form of dividends. A stockholder-employee takes his earnings in salary, bonuses and other forms of benefits." (*In re Marriage of Imperato, supra,* 45 Cal.App.3d 432 at pp. 437-438 [italics added].)

---

[7]This statute provides in pertinent part as follows: "The earnings and accumulations of a spouse . . . , while living separate and apart from the other spouse, are the separate property of the spouse."

The *Imperato* court held that where the husband is the sole shareholder in a corporation and there is evidence that the corporation had not been treated by the parties as a separate entity, the corporate entity should be disregarded and treated as a sole proprietorship so that the increase in net worth from the time of separation to the time of trial would be treated as separate rather than community property. (*In re Marriage of Imperato, supra,* 45 Cal.App.3d 432 at p. 440.) In the present case, however, husband is not the sole shareholder in the law firm. Throughout the pretrial period of separation, he received salary, bonuses and other benefits which are attributable to his employment and represent his total postseparation earnings. On the other hand, the increase in value of the shares after the parties' separation represents the earnings of the *corporation* and not of husband. The evidence established that the increase in value of the corporation was primarily attributable to an increase in accounts receivable during that period. We conclude that, under these circumstances, Civil Code section 5118 is inapplicable to the postseparation increase in the net worth of a corporation.

### *Accuracy of Computation*

The stock purchase agreement valuation formula, which the trial court used in determining the value of husband's interest in the law firm, is based in part on the total accounts receivable of the firm at the time of valuation. Husband contends that the trial court incorrectly valued his interest in the firm at $35,096 by erroneously using wife's figure of $400,960 as the amount of the firm's current accounts receivable. He argues that this figure was repudiated by wife's own expert in favor of husband's figure of $388,384. This is an inaccurate representation of the testimony. Wife's accountant testified that the value of husband's interest would be only $30,528 *if* the correct base figure were $388,384, but that he (the witness) had not seen any substantiation of the lower accounts-receivable figure.

The disparity between the accounts-receivable figures offered by husband and wife created a mere conflict in the evidence, the resolution of which was solely within the province of the trial court. (See 6 Witkin, Procedure, *op. cit. supra,* Appeal, § 245, p. 4236.)

### AWARD OF ATTORNEY'S FEES

Husband contends that the trial court abused its discretion in awarding attorney's fees to wife in the amount of $3,500. Civil Code

section 4370 authorized the trial court to award such attorney's fees and costs as may be reasonably necessary to maintain or defend the proceedings. An award of attorney's fees pursuant to this section is within the trial court's discretion, and will be disturbed on appeal only upon a clear showing of abuse. (*In re Marriage of Janssen* (1975) 48 Cal.App.3d 425, 428 [121 Cal.Rptr. 701].)

The purpose of an award of attorney's fees to a wife is to provide her with sufficient resources to present her case. (*In re Marriage of Jafeman, supra,* 29 Cal.App.3d 244, 263-264.) A prerequisite of the award is a showing of her need for money to maintain the proceedings. (*In re Marriage of Gonzales* (1975) 51 Cal.App.3d 340, 344 [124 Cal.Rptr. 278].) The trial court must therefore consider the respective incomes of the husband and wife. (*In re Marriage of Janssen, supra,* 48 Cal.App.3d 425 at p. 428.)

Viewed in the light most favorable to wife, the evidence supports an implied finding of need. On the basis of wife's testimony and financial report, the trial court could reasonably conclude that her net monthly income was less than adequate to satisfy attorney's fees. In view of husband's comparatively substantial income, wife's need for expert legal counsel and husband's ability to pay cannot be questioned. No abuse of discretion appears.

The judgment is affirmed. Neither party shall recover costs on appeal.

Rattigan, Acting P. J., and Christian, J., concurred.

A petition for a rehearing was denied March 20, 1979, and the opinion was modified to read as printed above. The petition of appellant wife for a hearing by the Supreme Court was denied April 19, 1979. Newman, J., was of the opinion that the petition should be granted.