[Civ. No. 47290. First Dist., Div. Two. July 30, 1982.]

In re the Marriage of RUTH P. and LEWIS L. FENTON.
LEWIS L. FENTON, Appellant, v.
RUTH P. FENTON, Appellant.

■■■■■■■

■■■■■■■

COUNSEL

Robert H. Ames and Pioda, Bryan & Ames for Appellant Husband.

Lowell H. Sucherman and Cartwright, Sucherman, Slobodin & Fowler for Appellant Wife.

OPINION

**GRODIN, P. J.**—Ruth and Lewis Fenton each appeal from portions of a judgment dividing their property and awarding spousal support and attorneys' fees after dissolution of their 23-year marriage. Wife contends that the trial court erred in denying her motion to appoint an out-of-county judge, in failing to award her greater spousal support and attorneys' fees, in failing to account for goodwill in husband's law practice, and in finding a certain debt to be entirely a community obligation. Husband contends that the evidence does not support the trial court's determinations on several property valuations, including his separation entitlement under his employment contract, the community interest in his law corporation, the value of his interest in a partnership, and the value of certain life insurance policies. We consider these contentions in the order stated.

I. *Wife's Contentions.*

A. *The motion to assign an out-of-county judge.*

■ Wife made several attempts by motion to disqualify all Monterey County judges from hearing this matter and for designation of an out-of-county judge because husband is a leading attorney in that county, and she was of the opinion that in light of his prestige, influence, and the part he played in obtaining bar association indorsements for the county judiciary, it would be impossible for any local judge to provide a fair and impartial trial. She made no motion for change of venue

■■■■■■■

(Code Civ. Proc., § 397), nor did she invoke the standards and procedures as established by law (Code Civ. Proc., § 170 et seq.) for disqualification of individual judges.[1] (*Develop-Amatic Engineering* v. *Republic Mortgage Co.* (1970) 12 Cal.App.3d 143, 150 [91 Cal.Rptr. 193].)

Wife argues that a motion for change of venue was unnecessary, in light of the provisions for appointment of a judge by the Chairperson of the Judicial Council when all judges are disqualified (Code Civ. Proc., § 170.6), and that since her grounds for disqualification as to all judges was the same, to force her to proceed against each judge individually would have been a waste of time. Assuming, arguendo, that the procedure she chose was an acceptable one, we nevertheless find no reversible error. Code of Civil Procedure section 170, subdivision (a)(5), which is the statutory provision most supportive of wife's cause, provides for disqualification of a judge "[w]hen it is made to appear probable that, by reason of bias or prejudice of such ... judge a fair and impartial trial cannot be had before him." To show bias or prejudice under that section, there must be declarations showing indications of personal bias or the existence of some fixed anticipatory prejudgment. (*In re Marriage of Lemen* (1980) 113 Cal.App.3d 769, 789 [170 Cal.Rptr. 642]; see generally, 1 Witkin, Cal. Procedure (2d ed. 1970) Courts, § 71, pp. 349-350.) While wife was understandably apprehensive, we must assume that the judges who passed upon her motions conscientiously believed that they, and other local judges, could determine the matter objectively and in conformity with their oaths of office. No precedent, or authority, of which we are aware would justify us in holding that the prominence of husband, or his role in the local bar, established disqualification of all Monterey County judges as a matter of law.

### B. *Spousal support.*

Wife was awarded $2,000 per month spousal support. She contends that the award was grossly inadequate based on the criteria established by Civil Code section 4801, subdivision (a). She points particularly to the relative positions of the parties. Her husband is an attorney in good health and with an excellent professional reputation, earning in excess of $100,000 per year, and married now to a woman who also earns a salary. Wife, on the other hand, has devoted herself primarily, through-

---

[1] Wife contends that Judge Leach, who tried the case, was prejudiced in favor of her husband, but she made no effort to disqualify him.

out the marriage, to her husband's career, to the upbringing of their three children, and to a variety of community activities. At the time of the trial she was 51 years of age, had no employment record (except as manager of a hotel which the parties owned for several years) and has suffered from high blood pressure, recurring pulmonary emboli, and arthritis. She points also to the duration of the marriage, and to the upper-middle-class standard of living which the parties had maintained.

Husband, in contrast, stresses the value of the assets awarded wife and their income producing potential. (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 116-117 [113 Cal.Rptr. 58]; *Millington* v. *Millington* (1968) 259 Cal.App.2d 896, 924-925 [67 Cal.Rptr. 128].) He also minimizes her health problems, and asserts that, considering her education and her experience in community affairs and hotel management, she has the ability to engage in gainful employment.

■ The trial court found that wife was able to support herself. This limited finding is insufficient to satisfy the requirement of Civil Code section 4801, subdivision (a), since on the facts of this case (cf. *In re Marriage of Lucero* (1981) 118 Cal.App.3d 836, 844-845 [173 Cal.Rptr. 680]), it provides an inadequate basis for reviewing the exercise of the trial court's discretion. We do not know, for example, what the trial court believed the wife's earning capacity to be, taking into account her age, medical condition, relative lack of employment experience, and the state of the job market; nor do we know what the trial court found, as between conflicting contentions, regarding the amount of net income available to the wife from distributed assets, or the needs of each of the parties in relation to projected income, or their respective standards of living. (*In re Marriage of Epstein* (1979) 24 Cal.3d 76, 89-90 [154 Cal.Rptr. 413, 592 P.2d 1165].) In short, we know practically nothing about the reasoning underlying the award, and consequently, we would come close to abandoning our constitutional function if we did not insist upon at least the information required by section 4801, subdivision (a) in the form of appropriate findings. Upon remand, the trial court will reconsider the award of spousal support, and make appropriate findings as required.

C. *Wife's attorneys' fees and costs.*

A similar aura of mystery surrounds the matter of wife's attorneys' fees and costs. At the time of the court hearing, wife had incurred $14,400 in attorneys' fees plus costs of $3,165 for an expert witness,

$2,480 for real property appraisals, and $1,480 for personal property appraisals. The court awarded a total of $5,750, for what it found to be "[t]he reasonable value of [wife's] . . . costs, fees, services of appraisers, financial advisors, accountants and others."

If this finding represents a determination that the bills submitted by wife's attorneys and experts are excessive in relation to the amount of time each of them spent on the matter, or in relation to the fee billed per hour, the record would not support such a finding. Her attorneys, for example, submitted evidence that they spent 160 hours preparing and trying the case, and there was no evidence that their billing rates were not comparable to those of other professionals in the same community with similar experience.

There is some suggestion in the record that the finding represents a determination that the time spent by the attorneys and other experts was excessive in relation to what the case required. Wife changed attorneys before trial, for example, retaining an out-of-town firm, and her original counsel explained that when it appeared that husband would not cooperate with discovery and was going to contest the matter, it was his judgment that wife should retain a trial attorney. The court commented that original counsel should not have taken the case. In light of the delicate relationship between attorney and client, and the role of husband in the local community, it is doubtful that this view of the matter would justify discounting of fees.

Similarly, the court commented at one point that "a lot of money is often spent on experts when it's not necessary," and that if it was "going to be a war of experts, maybe the Court should appoint appraisers independent of both parties." The court did not appoint independent appraisers, however, and given the complexity of the case, as well as the wife's relative unfamiliarity with the financial matters involved, it is doubtful that the record would support a determination that the experts were not required.

In any event, we should not be left to guess at the trial court's reasoning. *In re Marriage of Lopez, supra*, 38 Cal.App.3d 93, 113, discusses the factors to consider in determining a reasonable fee in dissolution cases. Upon remand, the trial court will reconsider the matter of attorneys' fees and costs, and make appropriate findings.

D. *Goodwill in husband's law corporation.*

■ Wife contends that the trial court erred in failing to account for goodwill in husband's law corporation. In its memorandum decision, the court explained its determination: "There is no goodwill in the corporation, because ownership of a share in the corporation will not produce any income. Income is produced solely through an employment contract, and the employment contract is controlled by a Compensation Committee, a Board of Directors, and ultimately from 18 to 20 stockholders. [¶] The corporation may have a use value within it by reason of its existing production flows, but ownership cannot convert these use values into an economic value. Only employment, with or without an ownership interest, can do that."

After hearing wife's objections at the close of trial, the court attempted to clarify its decision: "[I]t's not a matter of anything that is inherent in either partnership or corporate form, but is simply inherent in whatever the agreements are regardless of the specific nature of the entity." We agree with wife that the trial court appears to have misconstrued either (1) the definition of goodwill or (2) the factors relevant to its determination.

■ "The fact that 'professional goodwill' may be elusive, intangible, difficult to evaluate and will ordinarily require special disposition, is not reason to ignore its existence in a proper case." (*In re Marriage of Lopez, supra,* 38 Cal.App.3d 93, 108.) "[W]here the issue is raised in a marital dissolution action, the trial court must make a specific finding as to the existence and value of the 'goodwill' of a professional business as a going concern whether related to that of a sole practitioner, a professional partnership or a professional corporation. [Citations.]" (*Id.,* at p. 109.)

■ Goodwill has been defined as: ""the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances, or necessities, or even from ancient partialities or prejudices. [Citation.] ... it is the probability that the old customers will resort to the old place. It is the probability that the business will continue in the future as in the past, adding to the profits of

the concern and contributing to the means of meeting its engagements as they come in."' [Citations.]" (*In re Marriage of Foster* (1974) 42 Cal.App.3d 577, 581-582 [117 Cal.Rptr. 49].)

■ Guidelines for the determination and value of goodwill were set forth in *In re Marriage of Lopez, supra*, 38 Cal.App.3d at pages 109-110: "Certain matters merit consideration which may be said reasonably to contribute to, diminish, or affect the intangible value of professional goodwill at the time of dissolution and the continuity and retention of the benefits thereof which the professional practitioner will continue to enjoy after the marital dissolution. In that context some such factors are the practitioner's age, health, past demonstrated earning power, professional reputation in the community as to his judgment, skill, knowledge, his comparative professional success, and the nature and duration of his business as a sole practitioner or as a member of a partnership or professional corporation to which his professional efforts have made a proprietary contribution."

Contrary to husband's assertion, what a shareholder in a professional corporation is entitled to receive on withdrawal or termination is not controlling. ■ "The value of community goodwill is not necessarily the specified amount of money that a willing buyer would pay for such goodwill. In view of exigencies that are ordinarily attendant a marriage dissolution the amount obtainable in the marketplace might well be less than the true value of the goodwill. *Community goodwill is a portion of the community value of the professional practice as a going concern on the date of the dissolution of the marriage.* ■ As observed in *Golden*, '... in a matrimonial matter, the practice of the sole practitioner husband will continue, with the same intangible value as it had during the marriage. Under the principles of community property law, the wife, by virtue of her position of wife, made to that value the same contribution as does a wife to any of the husband's earnings and accumulations during marriage. *She is as much entitled to be recompensed for that contribution as if it were represented by the increased value of stock in a family business.*' (270 Cal.App.2d 401, 405.)" (*In re Marriage of Foster, supra*, 42 Cal.App.3d at p. 584, italics added.)

Husband relies exclusively on *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 463 [152 Cal.Rptr. 668], apparently for the proposition that there is no goodwill because of the restrictions and conditions in the employment contract and corporate bylaws. In *Aufmuth*, there was a stock purchase agreement which specifically excluded any

allowance for goodwill in its formula governing the purchase and sale of shares in the law corporation. In affirming the trial court's exclusion of goodwill as a valuation factor, however, the court did not rely on the stock purchase agreement. Rather, the court stated: "At the time of trial, husband was 31 years old and had been a member of the bar for only 7 years. He had been a member of his law firm for just five years, and a shareholder for only two years. In view of his *youth and comparative inexperience*, the trial court could reasonably conclude that he had not contributed in any substantial way to whatever goodwill the law firm *might* possess. *These factors* support the court's determination that goodwill was not to be considered in evaluating his interest in the firm." (*Id.*, at p. 463, italics added.)

Husband here confuses his entitlement upon termination with the existence of goodwill. This entitlement takes many forms, including pension plan, profit sharing plan, employment agreement payments, and $1,000 per share of the corporation, but we agree with wife that these are all posttermination benefits and have no bearing upon the existence or nonexistence of goodwill in the business as a going concern. In *In re Marriage of Slater* (1979) 100 Cal.App.3d 241 [160 Cal.Rptr. 686], we rejected a similar contention.

In *Slater*, husband was a physician bound by a partnership agreement that provided for the repurchase of his interest at a price which effectively excluded any value for goodwill, although the provision recited that the price included the sale of his interest in the goodwill of the partnership. (*Id.*, at p. 245.) The agreement further provided that upon withdrawal, a partner would not practice medicine in the same county for three years. The trial court determined the value of the husband's practice in accordance with the formula set forth in the partnership agreement, and we reversed, stating: "The record indicates that the court concluded that it could not value the goodwill on a different basis because 'if he [husband] left the partnership . . . he would not receive that goodwill.' Thus, the record indicates that the trial court felt constrained to value the husband's interest in the partnership as a withdrawal right with a goodwill of zero. *However, the asset being divided in the proceeding was the husband's interest in the partnership, not his contractual withdrawal rights.* His interest in the partnership was an interest in a going business analogous to pension rights (*In re Marriage of Fonstein*, 17 Cal.3d 738.)" (*Id.*, at p. 245; see also, Mauldin, *Identifying, Valuing, and Dividing Professional Goodwill as*

*Community Property at Dissolution of the Marital Community* (1981) 56 Tul. L.Rev. 313, 327-328.)

 It appears that the trial court in the instant case felt constrained by the stock purchase agreement. This is not a case like *In re Marriage of Aufmuth, supra,* 89 Cal.App.3d 446, where, in any event, husband was too young and inexperienced to have contributed to the goodwill of the law firm. On the contrary, husband here was the highest wage earner in his law firm, his professional reputation in the community was excellent, he had been in practice for over 25 years, and wife's expert testimony revealed that his earning power was considerably greater than that of his peers. This experience, reputation, and skill was developed over the years he was married to wife and it is a community asset. It indirectly creates excess income for husband whether he stays with his firm or strikes out on his own. The value of "goodwill" is well established in the case law, and it cannot be eliminated by a recital in the corporate documents.

Upon remand, the trial court will determine wife's entitlement to goodwill in accordance with these authorities.

E. *The note to Wells Fargo Bank.*

The trial court concluded that a $65,373 note to Wells Fargo Bank was a community obligation. Wife contends this was error because it represented in part money borrowed to pay taxes on husband's earnings after separation and was, to that extent, his separate obligation. (*In re Marriage of Epstein, supra,* 24 Cal.3d 76, 89.) Husband appears to concede in his testimony and in his brief that an amount of $4,495 was allocable to his separate debt, but he contends that the balance went to pay taxes on community income. Upon remand, the trial court will determine what amounts were expended for separate and for community purposes, and make appropriate findings.

II. *Husband's Contentions.*

A. *The value of the life insurance policies.*

The parties agree that the value of the life insurance policies was $11,522 and not $13,500. On remand, the court is instructed to make the appropriate adjustment.

**464**

## B. *The valuation of husband's separation entitlement.*

█ The trial court found husband's rights to retirement benefits, discounted to present value, to be worth $94,755. This figure was computed by wife's expert who took the sum to which husband would become entitled at age 60 and discounted it to present value.

Husband contends that the computation should have been based on his existing privilege to take early retirement because any additional amount would be attributable to postseparation earnings. This argument was rejected in *In re Marriage of Andreen* (1978) 76 Cal.App.3d 667, 675 [143 Cal.Rptr. 94] [2] where the court stated: "Husband errs in his claim that any post-separation judicial promotion would derive solely from his post-separation efforts. The promotion would stem from an indivisible mixture of past and future progress, some of which would have occurred during the marriage. In computing and apportioning a nonemployee spouse's interest in present or future retirement benefits, a court is not bound to any fixed formula and has discretion to select any reasonable method. [Citation.] The trial court did not abuse its discretion when it chose the date of retirement instead of the date of separation as the time point for valuing the retirement benefits. [Citation.]"

## C. *The valuation of the law corporation.*

█ The trial court found that there was a community property interest in the law corporation, apart from the employment agreement of $41,811. In its memorandum decision the court explained: "*Note 2.* There is an interest in H, F, J & A, Inc. apart from the employment agreement. The employment agreement provides for payments on leaving employment as a means of paying for services not fully realized at the time of leaving employment. There is no stockholder agreement in evidence which defines the rights of the continuing stockholder and retiring employee. There is no agreement which ties the two situations together. It may be that the stockholders-employees consider that receipt of the retirement pay cancels any interest in the corporation, but there is no evidence that that is or must be the case."

[2] A similar argument was also rejected in the case relied upon by husband, *In re Marriage of Judd* (1977) 68 Cal.App.3d 515, 523 [137 Cal.Rptr. 318]. In his reply brief husband retreats to the position that "if no present entitlement had been present, an attempt to estimate the present value of a future payment could have been necessary." The point is he is not taking early retirement, and the trial court was well within its discretion in choosing the method of valuation it did.

Husband contends that this was error because "there was no evidence ... that husband could obtain any payment other than that to which he was entitled as salary, bonus, profit sharing, pension or separation payment."

The trial court's figure was based on wife's expert testimony regarding the total worth of the corporation. Her expert testified that without reference to the work-in-progress, and remainder from consideration of the goodwill, pension and employment agreement, there remained tangible and intangible assets worth $753,355. On the premise that husband had a 5.5 percent interest in the corporation, the expert determined that his share of the stockholder's equity was $41,811. In other words, that is the additional amount husband would receive if the corporation were dissolved. There is some question whether the 5.5 percent figure is accurate, and that is a matter for reconsideration by the trial court on remand. Subject to such reconsideration, this evidence is ample to sustain the trial court's finding as to the value of husband's share. The fact that husband may not actually receive this amount if he withdraws from the corporation does not mean the assets it represents have no present value.

D. *The value of the Coast Leasing partnership.*

The trial court found the value of husband's 1/20 interest in the Coast Leasing partnership to be $11,650. Husband contends that the only value for this asset that has evidentiary support is the $5,000 sale price of recent purchases of a like interest. He recognizes that wife's expert testified that the value was $13,696, but contends that this opinion was shown by his own testimony to be based on erroneous assumptions and inaccurate information. The trial court heard the valuation evidence presented by both sides and came up with a figure in between. Its determination is entirely reasonable and supported by substantial evidence.

Reversed and remanded for further proceedings in accordance with this opinion. Husband to bear costs on appeal.

Miller, J., and Smith, J., concurred.

A petition for a rehearing was denied August 27, 1982.