761 P.2d 138

**In re the Marriage of John F. MOLLOY, Petitioner–Appellee,**

v.

**E. Josephine MOLLOY, Respondent–Appellant.**

**No. 2 CA–CIV 5916.**

Court of Appeals of Arizona, Division 1, Department A.

March 22, 1988.

Reconsideration Denied May 4, 1988.

Review Denied Sept. 20, 1988.

Mesch, Clark & Rothschild, P.C. by J. Emery Barker, Tucson, for petitioner-appellee.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Philip C. Gerard and Larry L. Smith, Phoenix, for respondent-appellant.

## OPINION

FIDEL, Judge.

A wife appeals from a decree of marital dissolution, arguing that the trial court inappropriately restricted her effort to present expert testimony evaluating the marital community's interest in her husband's law firm. We conclude that the wife is correct. In doing so we hold that a shareholder's interest in his law firm's goodwill is an asset subject to expert evaluation and inclusion in the marital community estate for purposes of equitable distribution.

John F. Molloy (Husband) petitioned for divorce in 1984. His wife, E. Josephine Molloy (Wife), moved pursuant to A.R.S. § 25–324 that the court allocate community funds in advance of trial for payment of expert appraisers' fees to appraise Husband's law practice, a community asset.[1] Wife requested "a reasonable amount not less than $10,000" for that purpose. Husband responded that the value of the community's interest in his law firm was conclusively established by the stock redemption and deferred compensation agreements among shareholders in the firm, and he moved in limine that the trial court prohibit Wife "from presenting any evidence of a 'going business value,' 'goodwill value' or any other value not strictly provided for by the terms and conditions of [those] agreements...."

The trial court granted Husband's motion and prohibited Wife "from presenting any evidence of a value of [Husband's] interest in said corporation other than as can be determined from existing agreements between [Husband] and the corporation." The court permitted Wife the opportunity, however, to challenge "any inconsistency or irregularity in the determination of a 'value increment' as defined in the

Stock Redemption Agreement which may have occurred by reason of the existence of this action."

The parties proceeded to trial. The court ultimately accepted Husband's estimates of $25,000 as the present value of his deferred compensation plan and $10,000 as the present value of his law firm stock pursuant to the stock redemption plan. Wife did not use the leeway extended by the court to claim "inconsistency or irregularity [in Husband's stock evaluation] ... by reason of the existence of this action." That is, she did not then claim (and does not now claim) that Husband and his law firm manipulated the law firm's agreements to undervalue Husband's interest as reflected within them in order to advance his position in this case. Wife was precluded, however, from introducing expert testimony to the effect that the actual value of Husband's law practice, including goodwill, exceeded that derived from examination of the firm's agreements alone.

A decree of dissolution was entered on October 30, 1985, and amended on July 21, 1986. Husband was awarded his law firm stock and deferred compensation plan at the values indicated above. The sole basis for Wife's appeal is her claim that she should have been permitted to present evidence of greater value. The court undervalued Husband's law practice, she argues, and thereby undervalued the total community property to be equitably divided between the parties.

Despite some overlap, we glean three separate arguments by the Husband for upholding the decree: (1) because law firms possess unique attributes, their goodwill, unlike the goodwill of other forms of professional associations, is not subject to expert evaluation as an asset of the marital estate; (2) even if Husband has a cognizable interest in his law firm's goodwill, its valuation is controlled by firm agreements (i.e., the deferred compensation plan and stock redemption plan); (3) appellate review of the trial court's ruling in limine is

---

1. The forty-three year marriage of the parties spanned Husband's entire legal career, including his law school years. The parties did not dispute that his practice was a community asset.

precluded by Wife's failure to make an offer of proof at trial.

### Law Firm Goodwill

■ In *Mitchell v. Mitchell*, 152 Ariz. 317, 732 P.2d 208 (1987), our supreme court considered the evaluation of community property rights in the goodwill value of an accounting firm. It held that the trial court was not bound in evaluating the community's interest by the firm's termination buy out provisions or by the specification among those provisions that no value be placed on firm goodwill. The court recognized the goodwill of a spouse's professional practice as a community asset to be evaluated for the purpose of equitable distribution upon marital dissolution. *Id.* at 321, 732 P.2d at 212.

Wife invokes *Mitchell;* Husband argues that it does not apply. A law firm, he points out, is ethically proscribed from selling its goodwill. *See, e.g., Geffen v. Moss,* 53 Cal.App.3d 215, 125 Cal.Rptr. 687, 79 A.L.R.3d 1232 (1975); Drinker, *Legal Ethics,* pp. 161, 189, Columbia Univ. Press (1965). Nor may it extract binding covenants not to compete from its members. E.R. 5.6, Rules of Professional Conduct, Rule 42, Rules of the Supreme Court. These restrictions, he suggests, distinguish law firms from other professional organizations and render the evaluation of a law firm's goodwill inappropriate.

The supreme court characterized the *Mitchell* issue broadly: "Is Goodwill of a Professional Partnership a Community Property Asset?" 152 Ariz. at 319, 732 P.2d at 210. It expressly rejected an argument "that a partner's goodwill is a personal, non-divisible asset because it is not readily marketable." 152 Ariz. at 320, 732 P.2d at 211. In so doing, it held as follows:

> [B]ecause the professional practice of the sole practitioner or partner will continue after dissolution of the marriage, with the same goodwill as it had during the marriage, we find that a refusal to consider goodwill as a community asset does not comport with Arizona's statutory equitable distribution scheme. We prefer to accept the economic reality that the goodwill of a professional practice has value, and it should be treated as property upon dissolution of the community, regardless of the form of business. *Wisner v. Wisner,* [129 Ariz. 333, 631 P.2d 115 (App.1981)] (corporation); *In re Marriage of Fonstein,* [17 Cal.3d 738, 131 Cal.Rptr. 873, 552 P.2d 1169 (1976)] (partnership); *In re Marriage of Watts,* 171 Cal.App.3d 366, 217 Cal.Rptr. 301 (1985) (partnership); *In re Marriage of Fenton,* 134 Cal.App.3d 451, 184 Cal. Rptr. 597 (1982) (corporation); *In re Marriage of Slater,* [100 Cal.App.3d 241, 160 Cal.Rptr. 686 (1979)] (partnership); *In re Marriage of Foster,* 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974) (sole practice); *In re Marriage of Lopez,* [38 Cal. App.3d 93, 113 Cal.Rptr. 58 (1974)] (partnership); *Golden v. Golden,* [270 Cal. App.2d 401, 75 Cal.Rptr. 735 (1969)] (sole practice); *In re Marriage of Hull,* 712 P.2d 1317 (Mont.1986) (professional corporation); *Lockwood v. Lockwood,* 205 Neb. 818, 290 N.W.2d 636 (1980) (partnership); *Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1 (1983) (solely owned professional corporation); *In re Marriage of Hall,* 103 Wash.2d 236, 692 P.2d 175 (1984) (professional corporation); *Matter of Marriage of Fleege,* 91 Wash.2d 324, 588 P.2d 1136 (1979) (sole practice); *Marriage of Lukens,* [16 Wash.App. 481, 558 P.2d 279 (1976)] (sole practice).

152 Ariz. at 321, 732 P.2d at 212.

The *Mitchell* court focused not on marketability or transferability of a professional's goodwill but, rather, on the value of that asset to the professional himself as an ongoing member of his profession. We have included in our quotation the long chain of cases invoked by the court to support this approach, because four among them—*In re Marriage of Fonstein, In re Marriage of Fenton, In re Marriage of Lopez,* and *Dugan v. Dugan*—involved a lawyer's goodwill. Indeed, in *Dugan* the Supreme Court of New Jersey expressly held that "inability to sell a law practice does not eliminate existence of goodwill and its value as an asset to be considered in equitable distribution." 92 N.J. at 434, 457 A.2d at 6. By its selection of supporting

cases, our supreme court demonstrated an intent that its holding apply to a range of professions including lawyers. (Other professions represented among the cited cases are physicians, dentists, and C.P.A.'s.) Thus, from *Mitchell* we derive the holding that lawyers, like other professionals, face evaluation of their professional goodwill as a community asset upon marital dissolution.

As a caveat to this holding, we emphasize that a distinction lies between future earning capacity and goodwill. As stated by the Supreme Court of New Jersey,

> Future earning capacity *per se* is not goodwill. However, when that future earning capacity has been enhanced because reputation leads to probable future patronage from existing and potential clients, goodwill may exist and have value. When that occurs, the resulting goodwill is properly subject to equitable distribution.

*Dugan*, 92 N.J. at 433, 457 A.2d at 6.

### Impact of Firm Agreements

■ We next address Husband's contention that, even if his share of his law firm's goodwill is a community asset subject to evaluation, his law firm shareholder agreements establish a preclusive measure of his law firm interest, including goodwill, and render unacceptable and inadmissible any effort to evaluate that interest by independent measure.

Husband points out that goodwill is, in fact, an element of consideration in his firm's deferred compensation plan, to the extent permitted by the Rules of Professional Conduct. E.R. 5.6, Rules of Professional Conduct, Rule 42, Rules of the Supreme Court, provides in part:

> A lawyer shall not participate in offering or making:
>
> (a) a partnership or employment agreement that restricts the rights of the lawyer to practice after termination of the relationship, *except an agreement concerning benefits upon retirement*;

(Emphasis added).

Husband's deferred compensation agreement expressly recognizes "that at and after the time [of] the termination of the employment relationship between the Firm and Employee, the Employee may continue to contribute to the goodwill of the firm...." Consistently with E.R. 5.6, it provides for this goodwill by suspending deferred compensation payments to an ex-employee who continues to practice law "until such time as the Employee dies, permanently retires from, or otherwise permissibly ceases the practice of law and all related and/or associated endeavors." Husband appears to reason that, because the law firm handles goodwill in this fashion for purposes of a member's buy out, goodwill can and should be treated in no other fashion by the courts for purposes of evaluation of the marital estate. The supreme court expressly rejected such an argument in *Mitchell*, stating:

> We believe the better approach is to consider the terms of the partnership agreement as one factor in the determination of the value of the community interest in goodwill without treating the agreement as conclusive.... This approach recognizes that partnership agreements are designed to deal with particular aspects of the business, and simply do not address the considerations involved in valuation for a marital dissolution. Clauses which establish value of assets between partners may be only minimally relevant when a partner's business continues but the partner's marriage ends.

152 Ariz. at 321–322, 732 P.2d at 212–213.

In a similar vein, Husband points to the testimony of his partner, John L. Donahue, Jr., to the effect that the law firm annually reviews its stock redemption agreement and deferred compensation agreement to determine their value to any member who should die or retire during the year. Husband argues:

> [T]he evaluation to arrive at the amount to be paid to the shareholder is performed by the firm and the calculations are based on the accounts receivable and the work in process. The calculations are prepared by lawyers evaluating their own law firm and figures are arrived at in a professional setting. Such a result

is certainly more reliable than an accountant or economist pontificating on the witness stand about multiples of excess earnings; especially when there exists *no* marketplace that can be used to test the veracity of the self-styled expert. (Emphasis in text).

Husband again confounds the admissible with the conclusive. Wife does not challenge Husband's right to introduce his firm agreement and his partner's testimony. Nor does she challenge his right to argue that his evidence is more persuasive than any countervailing evidence offered by Wife. She simply claims the right to countervail. We simply hold that she should have it.

### Offer of Proof

■ We next consider Husband's argument that, even if the trial court erred in prohibiting Wife from presenting independent expert evidence concerning the value of his practice, Wife waived the opportunity to appeal the ruling because she made no offer of proof of what such testimony would have been.

Offers of proof are controlled by Rule 103, Arizona Rules of Evidence, which states:

(a) Effect of erroneous ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . .

(2) Offer of proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Offers of proof serve the dual function of enabling the trial court to appreciate the context and consequences of an evidentiary ruling and enabling the appellate court to determine whether any error was harmful. *See Jones v. Pak–Mor Manufacturing Co.*, 145 Ariz. 121, 129, 700 P.2d 819, 827, *cert. denied*, 474 U.S. 948, 106 S.Ct. 314, 88 L.Ed.2d 295 (1985) (citing *M. Udall & J. Livermore*, Arizona Practice—Law of Evidence § 13 (2d ed. 1982).) Though offers of proof are usually prerequisite to appellate argument against the exclusion of evidence, *Montano v. Scottsdale Baptist Hospital, Inc.*, 119 Ariz. 448, 581 P.2d 682 (1978), there are exceptions to the rule. "Where the purpose and substance of the testimony expected is obvious, as when . . . the court has ruled broadly that no evidence is admissible in support of the theory or fact sought to be established—then an offer may not be necessary." *M. Udall & J. Livermore*, Arizona Practice—Law of Evidence § 13 (2d ed. 1982) (citing *Greco v. Manolakos*, 24 Ariz.App. 490, 539 P.2d 964 (1975); *State v. Kaiser*, 109 Ariz. 244, 508 P.2d 74 (1973); *Peterson v. Sundt*, 67 Ariz. 312, 195 P.2d 158 (1948); *Watson v. Southern Pacific Co.*, 62 Ariz. 29, 152 P.2d 665 (1944).)

In this case the purpose and substance of the testimony were obvious indeed. The proper valuation of Husband's practice was in sharp contention, and, though Wife had not yet obtained an expert's evaluation at the time the court granted Husband's motion in limine, the court could not have helped but realize that his ruling denied her the opportunity to present a valuation exceeding that derived from the agreements among shareholders in the firm. In the language of Udall and Livermore, the court "ruled broadly that no evidence [was] admissible in support of the theory or fact sought to be established." An offer of proof would have been superfluous. Moreover, having sought the trial court's exclusionary ruling at a time when Wife merely sought community funds to obtain an expert evaluation, and having successfully argued to the trial court that *any* such evaluation was precluded, Husband's counsel is singularly unpersuasive in arguing that the Wife should thereafter have obtained an expert evaluation and presented it by offer of proof.

### Conclusion

We hold that the trial court denied Wife a fair trial on the question of the value of Husband's practice by denying her the chance to contest Husband's evaluation with a differing evaluation of her own.

We reverse and remand to the trial court for further proceedings consistent with this opinion. Wife's application for appellate attorney's fees is denied without prejudice to her seeking such fees in a petition to the trial court pursuant to A.R.S. § 25–324.

JACOBSON, Acting P.J., and BROOKS, J., concur.